[No. 6308–1.   Division One.   April 16, 1979.]

SHIRLEE A. KINNEY, *Appellant,* v. EDGAR
D. BAUCH, ET AL, *Respondents.*

*Pain & Warren* and *Lawrence J. Warren,* for appellant.

*LeSourd, Patten, Fleming, Hartung & Emory* and *Lawrence E. Hard,* for respondents.

SWANSON, A.C.J.—Shirlee A. Kinney appeals an adverse judgment in a cause of action against Edgar D. Bauch, Mayor of the City of Tukwila, and the City for unlawful termination of employment and defamation. Kinney contends she was unlawfully discharged in retaliation for her participation in a lawsuit arising from allegations of sexual discrimination by the City, and defamed by Bauch at the time of discharge. We find no error and affirm.

Frank Todd, then Mayor of Tukwila, appointed Shirlee Kinney city clerk in 1972. In 1975 Kinney filed a grievance with Todd alleging sexual discrimination in salary increases. A hearing was held and discrimination found, whereupon Todd attempted to raise certain salaries. The city council filed suit to enjoin such salary increases as being outside the city budget.[1] The council succeeded, and

---

[1]This action, cause No. 792762, was entitled "Joanne Davis, et al., as Members of the City Council, Plaintiffs v. Frank Todd, as Mayor, Shirlee Kinney, as City Clerk, and Mabel J. Harris, as City Treasurer of the City of Tukwila, Defendants," hereinafter referred to as *Davis.* Finding of fact No. 6.

an appeal was taken with Kinney, as city clerk, named an appellant. Kinney testified she did not authorize the appeal nor actively support it.

Meanwhile, Todd had been defeated by Edgar Bauch in the general election of November 1975. In the period between Bauch's election and Kinney's discharge a number of incidents occurred which provoked Bauch's displeasure. The *Davis* appeal was scheduled to be heard May 14, 1976. On May 13, Mayor Bauch informed Kinney he was unhappy with her participation in her official capacity in the appeal and requested she withdraw therefrom or resign. Bauch told Kinney to appear in the office of the city attorney the next day to sign an affidavit withdrawing from the lawsuit. On the morning of the 14th, Kinney appeared as directed, willing to sign an affidavit if same received the approval of her personal attorney. Before an affidavit could be prepared and presented, Bauch called Kinney back to his office.

Thereupon, Bauch requested Kinney's resignation, advising he would terminate her if she refused to comply. Testimony conflicts regarding how long Kinney was given to choose between resignation and discharge. Before Kinney formally responded, however, Bauch telephoned a newspaper reporter on Saturday, May 15, 1976, to state he had fired Kinney. Bauch said the termination occurred due to a "high rate of error" in Kinney's department, an "overall inability to perform the job," and other factors including Kinney's involvement in the *Davis* appeal. The required letter of termination filed the following Monday cited insubordination, disruptive influence, and incompetence as reasons for the discharge.

At trial, the basic issue evolving from Kinney's discharge was whether it occurred in retaliation for her involvement in the *Davis* appeal. It is clear beyond peradventure in Washington that an employee, believing him– or herself to have been discriminated against on the basis of sex, may attempt redress through a civil cause of action. RCW 49.60.030 provides in pertinent part:

(1) The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical handicap is recognized as and declared to be a civil right. This right shall include, but not be limited to:

(a) The right to obtain and hold employment without discrimination;

. . .

(2) Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964;

. . .

*See also* Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Equally evident is the proposition that an employee engaging in such conduct may not be the subject of retaliation therefor by an employer. RCW 49.60.210 states:

It is an unfair practice for any employer, employment agency, or labor union to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden by this chapter, or because he has filed a charge, testified, or assisted in any proceeding under this chapter.

*See also* Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

We also note that recent federal case law establishes what we consider a sound premise: An employer motivated in part by retaliatory influences who discharges an employee engaged in protected activity violates the above mentioned civil rights statutes. That such retaliatory motivation may not be the principal reason for terminating an employee is immaterial, for any degree of retaliation works contrary to these laws. Thus, the court in *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318, 324 (D. Mass. 1976), *aff'd*, 545 F.2d 222 (1st Cir. 1976), reasoned as follows:

In *Tidwell v. American Oil Co.*, 332 F. Supp. 424 (D. Utah 1971), the court said plaintiff should prevail in a

retaliation case if opposition to employment practices was the "principal reason" for the discharge. *Id.* at 430. However, in *McDonnell Douglas Corp. v. Green* [411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)], the Court emphasized that "Title VII tolerates no racial discrimination, subtle or otherwise". *Id.*, 411 U.S. at 801, 93 S. Ct. at 1824. Similarly, Title VII tolerates no discrimination for participation in protected activities. Thus, if it is shown that retaliatory discrimination on the part of the employer contributed among other reasons to cause the discharge, there is a violation of the statute. *See Bradington v. International Business Machines Corp.* [360 F. Supp. 845, 854 (D. Md. 1973), *aff'd without opinion,* 492 F.2d 1240 (4th Cir. 1974)].

*See also Smith v. Sol D. Adler Realty Co.,* 436 F.2d 344 (7th Cir. 1970); *Armstead v. Starkville Municipal Separate School Dist.,* 325 F. Supp. 560 (N.D. Miss. 1971), *Stebbins v. Keystone Ins. Co.,* 2 FEP Cases 861 (D.D.C. 1970).

Initially, Kinney argues a conclusion of law of the trial court concedes a retaliatory motive and thus requires reversal. The trial court's judgment states in part:

May [*sic*] Bauch did not discharge plaintiff in retaliation for the exercise of a civil right or any other constitutionally protected right.

Conclusion of law No. 5, however, inserted by hand by the trial judge avers:

Mayor Bauch discharged plaintiff for a number of reasons, among which were the fact that he no longer had pleasure in continuing her as city clerk, *and the fact of her involvement in the appeal in the Davis lawsuit.*

(Italics ours.)

The discussion of the applicable law above illustrates that if the trial court believed Kinney's termination resulted in part because Bauch intended to retaliate against her status as a named appellant in a suit involving a claim of sexual discrimination, the trial court could not properly have held in favor of Bauch. We find such was not the case.

■ When conclusions of law and judgments are arguably inconsistent, we may look to the trial court's memo-

randum decision for clarification. *State v. Kingman,* 77 Wn.2d 551, 552, 463 P.2d 638 (1970); *Radosevich v. County Comm'rs,* 3 Wn. App. 602, 606, 476 P.2d 705 (1970). In the instant situation the memorandum decision demonstrates that the trial court believed Kinney's "involvement" *in her official capacity* in the *Davis* appeal was a factor, albeit slight, in her termination. While reviewing the factual background of the discharge, the trial court stated:

> The appeal in the case of *Davis v. Todd* was to be heard on Friday, May 14, 1976. The defendant mayor learned of this the day before. He then told plaintiff that he was unhappy with her participation in the lawsuit, and that if she didn't withdraw from it, he would terminate her as city clerk, but if she did withdraw he would not terminate her. He told her that she had a right to sue as an individual, but that she had no right to sue the city in her official capacity as city clerk. He testified that it was his understanding that she was in the lawsuit as part of an injunction restraining her as city clerk from issuing any checks or warrants to raise salaries of city employees in excess of amounts provided in the budget.

In concluding Kinney was not illegally terminated in retaliation for protected conduct, the trial court reasoned:

> In order to prevail on her first cause of action, plaintiff must prove that defendant discharged her in retaliation for involvement in the appeal of *Davis v. Todd,* and that her participation in that suit was the exercise of a civil right. --
> I am not aware of any authority that holds that a public official has a civil right to wage a lawsuit in his official capacity without express authority. On principle, I do not believe that such a right exists. In *Davis v. Todd,* plaintiff was sued in her official capacity. When the injunction was granted, the city clerk, as such, had no interest to assert or protect by appealing, and there was no official duty or authority for her to appeal. Plaintiff did have a personal interest as an individual in trying to obtain a higher salary, but she took no steps to separate her personal interest from the official capacity in which she was sued.

■ Thus, we conclude the argued inconsistency between the judgment and conclusion of law No. 5 did not in fact exist. Conclusion of law No. 5 should be construed to read:

Mayor Bauch discharged plaintiff for a number of reasons, among which were the fact that he no longer had pleasure in continuing her as city clerk, and the fact of her involvement [in her official capacity without proper authorization] in the appeal in the Davis lawsuit.

We are presented with no authority and have found none that challenges the propriety of such conclusion.

Kinney next argues that she raised a presumption of a retaliatory motive by showing the chronological relationship between her discharge and the appellate proceedings in *Davis*, which Bauch failed to rebut. Bauch responds that Kinney's employment was terminable at will, as RCW 35.24.020 provides the mayor of a third–class city—which Tukwila was at the time in question—"at his pleasure may remove all appointive officers." The Tukwila Municipal Code establishes that Kinney's position as city clerk is appointive. TMC 2.20.010. When appointed, a city clerk serves for an indefinite period. RCW 35.24.050.

■ Thus, Bauch argues Kinney served at his pleasure, and once he decided their working relationship was incompatible, he could terminate her without cause. Generally, such would be the case. Our Supreme Court has recognized, however, that statutory exceptions to the terminable–at–will doctrine exist, including the Civil Rights Act of 1964 and similar state statutes.

[B]oth Congress and the Washington state legislature have created exceptions to the terminable–at–will doctrine.[1]

[1]. . . The Civil Rights Act of 1964 prohibits covered employers from discharging employees because of race, color, national origin, religion, or sex. 42 U.S.C. § 2000e–2(a)(1) (1970). . . . Similarly, Washington law prohibits discharge based upon an employee's age, sex, marital status, race, creed, color, national origin, or the presence of sensory, mental, or physical handicap. RCW 49.60-.180(2).

*Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). Just as a discharge because of sex constitutes an exception to the terminable–at–will doctrine, so too must a discharge made in retaliation for the exercise of statutorily protected activity in opposition to alleged sexual discrimination.

■ Kinney's argument therefore requires review of the same shifting burden of proof as other claims alleging retaliation for opposition to discriminatory practices. That procedure, derived from discussion of related employment discrimination problems in *Griggs v. Duke Power Co.*, 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), has been summarized thusly:

> The employee must make out a prima facie case by showing (1) that she engaged in protected activity, i.e., she opposed unlawful employment practices or participated in Title VII proceedings, (2) that her employer was aware of the protected activities, (3) that she was subsequently discharged, and (absent other evidence tending to establish a retaliatory motivation) (4) that her discharge followed her protected activities within such period of time that the court can infer retaliatory motivation. Once the prima facie case has been demonstrated, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. If a reasonable basis for the discharge is shown, the employee then has the opportunity to demonstrate by evidence that the reasons assigned by the employer were pretexts.

*Hochstadt* at 324. *See, e.g., Bradington v. International Business Machines Corp.*, 360 F. Supp. 845 (D. Md. 1973), *aff'd without opinion*, 492 F.2d 1240 (4th Cir. 1974).

Here Kinney presented an adequate prima facie case. It was then incumbent upon Bauch to demonstrate the existence of a nondiscriminatory reason for the discharge. Evidence of incompetence, disloyalty, and disruptive influence, any of which could have served such purpose, moved the trial court to conclude Bauch had carried his burden. We find the record adequate to substantiate the trial court in

this regard. The majority rule recognizes that an employee, even when engaged in protected activity, may be terminated for proper cause. Thus, an employee

does not enjoy immunity from discharge for misconduct merely by claiming that at all times she was defending the rights of her sex by "opposing" discriminatory practices. An employer remains entitled to loyalty and cooperativeness from employees:

"[M]anagement prerogatives . . . are to be left undisturbed to the greatest extent possible. Internal affairs of employers . . . must not be interfered with except to the limited extent that correction is required in discrimination practices."

Additional views on H.R. 7152, U.S.Code Cong. & Admin.News, p. 2516 (88th Cong., 2d Sess., 1964).

*Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 230 (1st Cir. 1976). *See Brown v. Ralston Purina Co.*, 557 F.2d 570 (6th Cir. 1977); *Ammons v. Zia Co.*, 448 F.2d 117 (10th Cir. 1971); *Equal Employment Opportunities Comm'n v. Kallir, Philips, Ross, Inc.*, 401 F. Supp. 66 (S.D.N.Y. 1975). Thus, Kinney's first cause fails.

■ Kinney also contended she suffered defamation as the result of statements made by Bauch at the time of discharge. Both parties agree that in her position as city clerk, Kinney was a public official. This status increases one's burden of proving defamation.

The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). *See Clawson v. Longview Pub. Co.*, 91 Wn.2d 408, 589 P.2d 1223 (1979); *Mellor v. Scott Pub. Co.*, 10 Wn. App. 645, 519 P.2d 1010 (1974).

Here, the trial court held in conclusion of law No. 5

there was no evidence of malice or reckless disregard of whether the statements were true or false, . . .

and thus found no defamation. After careful review of the record we are in complete accord with the trial court. Kinney's charge of defamation lacks substantiation.

Finding no error, we affirm.

FARRIS and JAMES, JJ., concur.

Reconsideration denied June 26, 1979.

Review denied by Supreme Court October 26, 1979.