[No. 10878-3-III. Division Three. August 4, 1992.]

VICKI DELAHUNTY, ET AL, *Respondents,* v. GENE CAHOON, ET AL, *Appellants.*

832

*Gary E. Lofland, Ryan M. Edgley,* and *Lofland & Associates,* for appellants.

*Douglas D. Peters, Robert E. Lawrence-Berrey, Jr.,* and *Peters, Fowler & Inslee, P.S.,* for respondents.

SHIELDS, C.J. — This is an appeal by Amikay Development Company partners from judgments entered on jury verdicts against them for sexual harassment and unlawful retaliation in a lawsuit brought by waitresses in their employ. We affirm.

Gene and Helene Cahoon, Gene Mayer, and Robert and Barbara Schultz were partners, d.b.a. Amikay Development Company. Amikay owned and operated a truck stop, including the Gearjammer Restaurant, in Union Gap. On April 6, 1987, the general manager of the truck stop, Mark Barlow, hired Walter Parker as manager of the restaurant. Mary McEntire, Sherrie Hancock (now Martinez), Mary Hellums, Vandy Landsiedel, and Candi Ray[1] were Gearjammer waitresses; Vicki Delahunty was relief waitress, hostess and day shift supervisor (waitresses). The waitresses sued Amikay, and managers Barlow and Parker, alleging sexual harassment and retaliatory discharge.[2]

During presentation of the plaintiffs' case, the waitresses testified Mr. Parker engaged in offensive sexual conduct

---

[1]Lisa Penny, also a waitress, was dismissed from the lawsuit before trial.

[2]Additional claims made by the waitresses for outrage and violation of the Consumer Protection Act were dismissed and are not part of this appeal. The counterclaims and cross claims of the defendants also are not part of this appeal. All claims against Mr. Barlow, personally, were dismissed before trial.

toward them from April 7, the first day he worked, until April 17, when they established a picket line in protest. They testified Mr. Parker stared at them as though mentally undressing them, constantly touched them despite being told to keep his hands to himself, and made suggestive remarks. Following established procedure, the waitresses complained to their supervisors, Ms. Delahunty and Diane Uecker. Ms. Delahunty testified she spoke with Mr. Barlow about the waitresses' complaints on April 14. Two truckers, customers of the Gearjammer, also testified Mr. Parker was sexually harassing the waitresses; one stated he so informed Mr. Cahoon on April 14 or 15, the other stated he discussed Mr. Parker's conduct with Mr. Barlow on April 14.

On April 15, apparently at Mr. Barlow's request, Mr. Parker met with the waitresses and apologized, saying he was from the South, where people touched, and promised not to do it anymore. The waitresses testified his touching continued unabated, and that no effective action was taken by Mr. Barlow or the Amikay partners to stop the harassment after they were told what was happening.

Ms. McEntire testified she told Mr. Mayer early on April 17 something had to be done about Mr. Parker or she would leave at noon. When it became evident to them no resolution was forthcoming, Ms. McEntire and Ms. Delahunty walked off their jobs before noon on April 17; Ms. Hellums clocked out at 10 a.m., 3 hours early, and also left. Ms. Ray and Ms. Hancock did not report for their afternoon shifts. Ms. Landsiedel had the day off. The waitresses met and decided to picket the restaurant. Together, they proceeded to the Union Gap Police Department to ensure their planned picket in front of the Gearjammer was legal. They were referred to the prosecuting attorney's office, then to the Human Rights Commission, where they filed a complaint. At about 5 p.m. they established a picket line across the street from the restaurant. They were joined by other employees and customers.

Mr. Parker tendered his resignation shortly thereafter, but it was not immediately accepted. He was sent home while Messrs. Barlow and Cahoon decided what to do. The waitresses testified Messrs. Barlow and Cahoon approached them on the picket line and told them they looked stupid and ridiculous. The waitresses further testified, as did a trucker on the picket line, that Mr. Cahoon threatened he would make sure none of them would ever work in the Yakima Valley again; Mr. Cahoon denied it.

On Saturday, April 18, Messrs. Barlow and Cahoon again walked over to the picket line. When Mr. Cahoon informed the picketing waitresses Mr. Parker would no longer be working at the restaurant, they asked if they could return to work. They were informed Mr. Barlow would let them know Tuesday, April 21. After Messrs. Barlow and Cahoon left the picket line, several of the waitresses entered the restaurant and confronted them. They again asked if they could return to work, but when they received a noncommittal reply, Ms. Ray became belligerent and the waitresses were told to leave. Also on Saturday, a new slogan appeared on the advertising reader board; it said "Let our ladies wave you in." Its author was Mr. Cahoon.

By Monday, April 20, Mr. Parker's employment was terminated. Mr. Barlow did not let the waitresses know on Tuesday, April 21, or at any other time, whether they would be reinstated. The picketing continued while the waitresses waited to see if they could return to work, until April 24 or 25, when it was discontinued.

After a meeting with the Human Rights Commission and on advice of counsel, Amikay offered to reinstate Ms. Landsiedel and Ms. Hancock by letters dated April 27 and May 15, respectively. Ms. Landsiedel testified she received the offer too late to meet the acceptance deadline and Ms. Hancock did not accept the offer. All of the waitresses found employment elsewhere.

After the plaintiffs rested, the court dismissed the sexual harassment claims by Ms. Hellums for failure to state a prima facie case because there was no evidence she, per-

sonally, had been touched or any conduct had been directed toward her.

During presentation of the defendants' case, Mr. Barlow and the partners denied they were informed Mr. Parker was sexually harassing the waitresses. Mr. Parker testified he knew the waitresses were upset, but thought it was because he had criticized their work in an effort to improve the functioning of the restaurant. He testified he did not know they had complaints of sexual harassment.

The jury found Mr. Parker sexually harassed each of the waitresses, except Ms. Hellums, and that he was a manager at the restaurant. The jury awarded each of the waitresses, except Ms. Hellums, $7,500 as compensatory damages for sexual harassment. The jury also found in favor of the waitresses on the issue of retaliation and awarded each of them, including Ms. Hellums, $15,000. The court denied Amikay's motions for judgment n.o.v., new trial, and remittitur, and entered judgments for the plaintiffs. Amikay timely appealed.[3]

Amikay contends the trial court erred by (1) denying its motion for judgment n.o.v. on both claims, (2) instructing the jury that Amikay could be liable for sexual harassment on the theory Walter Parker was a manager, (3) instructing the jury on unlawful retaliation, and (4) denying its motion for remittitur. For convenience, we address the first two issues pertaining to the sexual harassment claim, then the two issues pertaining to unlawful retaliation and, finally, the damage issue involved in the motion for remittitur.

# I
## SEXUAL HARASSMENT

To establish work environment sexual harassment, an employee must prove: (1) the harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment

---

[3]Mr. Parker also filed a notice of appeal with the trial court, but apparently never pursued it. The waitresses filed notice of cross appeal of the court's award of costs and attorney fees, but did not brief or argue the issue. It is waived. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

affected the terms or conditions of employment, and (4) the harassment can be imputed to the employer. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985). Amikay argues the waitresses failed to prove the last two elements; thus, the court erred by denying its motion for judgment n.o.v.

■ *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991) sets forth the rules governing a motion for judgment n.o.v.:

> In ruling on a motion for judgment notwithstanding the verdict, a trial court exercises no discretion. The court must accept the truth of the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced. The evidence must be viewed in the light most favorable to the nonmoving party; the court may grant the motion only where there is no competent evidence or reasonable inference that would sustain a verdict for the nonmoving party. " 'If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.' "

(Footnotes omitted.)

1. Effect on Terms or Conditions of Employment. Amikay argues there was insufficient evidence Mr. Parker's harassment of the waitresses was sufficiently pervasive to alter the conditions of employment and create an abusive working environment. The contention is without merit. The waitresses testified Mr. Parker touched them practically every time he was within reach. Gearjammer patrons testified the waitresses were obviously upset with the harassment. On occasion the incidents resulted in tears. The testimony indicates Mr. Barlow, Mr. Cahoon and Mr. Mayer were all told the waitresses could not work there under the existing conditions. Accepting the truth of the waitresses' testimony and that of their witnesses, and all favorable inferences reasonably drawn from it, the evidence clearly supports a conclusion the harassment affected the terms or conditions of employment.

■ 2. Employer Liability. Liability for sexual harassment by a manager is imputed directly to an employer; however, liability for sexual harassment by a supervisor is imputed to

an employer only if the employee shows the employer authorized, knew or should have known of the harassment and failed to take reasonably prompt and adequate corrective action. *Glasgow*, at 407.

Amikay first argues the waitresses failed to prove Mr. Parker was a manager, so that liability could be imputed directly to Amikay. In this connection, while conceding the court's instruction correctly defined the terms "manager" and "supervisor", Amikay argues the issue of Mr. Parker's status as manager should not have been submitted to the jury. It asserts (1) Mr. Parker's status as a supervisor was established by the pleadings, and (2) Mr. Parker was not a manager, because he did not have independent authority to hire or fire employees.

■■ The complaint designated Mr. Parker as a "supervisory employee"; however, all parties testified he was hired as manager of the restaurant. A great deal of testimony was elicited by all parties regarding the extent of Mr. Parker's authority, particularly whether he could independently hire and fire other employees. CR 15(b) provides when issues not raised by the pleadings are tried with the express or implied consent of the parties, such issues are to be treated as if they were raised in the pleadings. Formal amendment is not necessary. There were no objections that the evidence was outside the issues raised in the pleadings and no continuance was requested; therefore, a CR 15(b) objection is not available to Amikay on appeal. *Daves v. Nastos*, 105 Wn.2d 24, 27, 711 P.2d 314 (1985).

As the trial court observed:

> [T]here is evidence that is in dispute as to whether Mr. Parker had the authority to hire and fire as contemplated within my statement of the law and definition of supervisor or manager. That conflict arises between Mr. Barlow's live testimony and that of his deposition.

A party is entitled to have the court instruct on its theory of the case if there is substantial evidence to support it. *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 135, 606 P.2d 1214 (1980). The court properly submitted the factual issue to the jury.

Amikay also argues the waitresses failed to prove Mr. Parker's employers took inadequate action once his conduct was brought to their attention. There was ample evidence Messrs. Barlow, Cahoon and Mayer knew of the sexual harassment allegations, but failed to act. The evidence clearly supports a conclusion imputing the harassment to Amikay, which acknowledges Mr. Parker's status as a supervisor.

## II
### RETALIATION

Preliminarily, Amikay asserts the retaliation claims are preempted by federal law. Amikay argues the National Labor Relations Board (NLRB) has exclusive jurisdiction over the waitresses' claims resulting from their walkout and the refusal to reinstate them, relying on the theory of preemption established in *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 242-45, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) and *Beaman v. Yakima Vly. Disposal, Inc.*, 116 Wn.2d 697, 704, 807 P.2d 849 (1991). Amikay misconstrues both cases.

■ It is true that when the activities a state purports to regulate are protected by section 7 of the National Labor Relations Act (NLRA), or constitute an unfair labor practice under section 8 of the NLRA, state jurisdiction must yield to the NLRB. *Garmon*, 359 U.S. at 244-46; *Beaman*, at 704.[4] This is not such a case. Here, the State is regulating practices of discrimination which violate its citizens' civil rights, with legislation substantially parallel to Title 7 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *See* RCW 49.60.010, .030; *Selberg v. United Pac. Ins. Co.*, 45 Wn. App. 469, 472, 726 P.2d 468, *review denied*, 107 Wn.2d 1017 (1986). The state antidiscrimination laws do not conflict with national policy governing unfair labor practices; the waitresses' state discriminatory retaliation claims are not preempted.

■■ Furthermore, even if state regulation of discriminatory discharge practices is potentially subject to federal

---

[4]The NLRA is part of the Labor Management Relations Act, 1947. Sections 7 and 8, to which *Garmon* refers, are found in 29 U.S.C. §§ 157, 158.

regulation under sections 7 and 8 of the NLRA, preemption of state jurisdiction is not required when (1) the activity regulated is merely a peripheral concern of the NLRA or (2) the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it cannot be inferred that Congress has deprived the states of the power to act. *Garmon*, 359 U.S. at 243-44; *Beaman*, at 704-05. Washington has a substantial interest in regulation of discriminatory employment practices, which does not threaten undue interference with the federal regulatory scheme as to unfair labor practices; thus, preemption is not required. *See also Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters*, 436 U.S. 180, 188, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978).

▇ To establish Amikay violated RCW 49.60.210, which prohibits retaliation against a person opposing a discriminatory practice forbidden by RCW 49.60, the plaintiffs must prove: (1) they engaged in statutorily protected opposition activity; (2) an adverse employment action was taken; and (3) a causal link between the former and the latter. *Allison v. Housing Auth.*, 59 Wn. App. 624, 626-27, 799 P.2d 1195 (1990), *aff'd*, 118 Wn.2d 79, 821 P.2d 34 (1991).

Amikay asserts the waitresses failed to prove these elements. Conceding picketing might be protected, Amikay argues refusal to work is not, citing *Selberg v. United Pac. Ins. Co., supra* at 472. Amikay also argues there was no evidence Amikay took any adverse employment action, alleging the waitresses were not fired, they quit. Amikay finally argues the court's instruction 22, which stated each waitress had to prove her discharge or denial of reemployment was *motivated by retaliation*, was not a correct statement of the law under *Allison*, 118 Wn.2d at 95. We disagree.

1. Statutorily Protected Activity. Amikay argues the waitresses' refusal to work was not protected.[5]

---

[5] It points out another waitress, Ginger Higgins, participated in the picket line while continuing to work. However, Ms. Higgins worked graveyard and was not exposed to Mr. Parker's offensive conduct.

■ To determine whether the waitresses' actions were protected, the court must consider the setting in which the activity arose and balance the interests and motivations of the employer and employees. *Selberg*, at 472. The setting here left the waitresses with three choices: putting up with Mr. Parker's sexual harassment, finding some effective means of opposing it, or leaving their employment entirely. Under these circumstances, balancing their intentions with the responsibilities imposed by statute on the employer, the evidence supports a conclusion their choice of effectively opposing the sexual harassment was protected.

■ 2. Adverse Employment Action. The court instructed the jury, without objection from Amikay, a plaintiff claiming retaliation had to prove she was "subsequently discharged or denied re-employment". The jury was also instructed, without objection from Amikay, that discharge could be actual or constructive.[6] The jury's findings Amikay took an adverse employment action became the law of the case. *Garcia v. Brulotte*, 94 Wn.2d 794, 797, 620 P.2d 99 (1980). The evidence supports a conclusion Amikay's replacement of waitresses who refused to subject themselves to continued sexual harassment by their manager was unlawful retaliation. Denial of the motion for judgment n.o.v. on this claim also was not error. The issue was for the jury to decide.

3. Causal Link Between Protected Activity and Adverse Employment Action. As Amikay points out, an employee may be terminated for proper cause even when engaged in protected activity. *Kinney v. Bauch*, 23 Wn. App. 88, 96, 596 P.2d 1074 (partially abrogated in *Allison*), *review denied*, 92 Wn.2d 1032 (1979).

At the time of trial, *Kinney* permitted a plaintiff to prove a prima facie case of retaliatory discharge in violation of

---

[6]Instruction 19 stated in part:

"To prove constructive discharge which is unlawful, a plaintiff must prove that a reasonable person in the plaintiff's position would have found working conditions intolerable because of sexual harassment, and that the plaintiff quit or resigned in response to the conditions."

RCW 49.60 by showing the defendant's adverse employment actions were *motivated to any degree by retaliation.* That standard of proof for the required causal connection was rejected in *Allison,* 59 Wn. App. at 628, and a "but for" standard adopted in its place. The Supreme Court, however, rejected both the "to any degree" and the "but for" standards of causation and instead construed RCW 49.60 to require a plaintiff to prove that retaliation was a substantial factor behind a defendant's adverse employment action. *Allison,* 118 Wn.2d at 95.

 Once a statute has been construed by this State's highest court, that construction operates as though it were originally written into it. *In re Moore,* 116 Wn.2d 30, 37, 803 P.2d 300 (1991) (quoting *State v. Darden,* 99 Wn.2d 675, 679, 663 P.2d 1352 (1983) (quoting *Johnson v. Morris,* 87 Wn.2d 922, 927-28, 557 P.2d 1299 (1976))). Therefore, to prevail on their RCW 49.60.210 retaliation claim, the waitresses had to prove retaliation was a "substantial factor" in Amikay's discharges or denial of reemployment. The trial court's instruction 22[7] did not contain the very broad standard rejected by both *Allison* courts. When read as a whole, the court's instruction the waitresses' bore the burden of proving Amikay's adverse action was "motivated by" retaliation and the retaliation was a "proximate cause" of their damages meets the "substantial factor" test.

---

[7]Instruction 22 reads:

"On the claim of retaliation, a plaintiff has the burden of proving each of the following propositions:

"1. She engaged in activity opposing practices of the employer which constitute sexual harassment;

"2. Her employer knew of her activity;

"3. She was subsequently discharged or denied re-employment;

"4. Her discharge or denial of re-employment was motivated by retaliation;

"5. She was damaged;

"6. The employer's retaliation was a proximate cause of her damage.

"If you find from your consideration of all of the evidence that each of these propositions has been proved, your verdict should be for that plaintiff. On the other hand, if any one of these propositions has not been proved, your verdict should be for the defendant partnership Amikay Development Company."

## III

### Remittitur

■ Amikay argues the awards exceed the range of substantial evidence, and appear to be the result of prejudice, but does not suggest the awards in this case are large enough to shock the court's conscience. Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable. *Bingaman v. Grays Harbor Comm'ty Hosp.*, 103 Wn.2d 831, 836, 699 P.2d 1230 (1985). As in *Bingaman*, other than the amount of the verdict, the record in this case discloses nothing to suggest the jury was prejudiced against the defendants or that it was incited by passion to regard the defense case unfairly. The issue, therefore, is reduced to the sufficiency of the evidence to support the awards.

■ The jury's role is that of finder of fact and part of its duty is to determine the amount of damages in a given case.

> Because these matters are within the jury's province, there is a strong presumption in favor of their validity. This presumption is codified in statute: RCW 4.76.030. A judge can only reduce a jury's damages determination when it is, in light of this strong presumption, wholly unsupported by the evidence, obviously motivated by passion or prejudice, or shocking to the court's conscience.

*Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 654-55, 771 P.2d 711, 780 P.2d 260 (1989). RCW 49.60.030(2) provides for recovery of actual damages, which includes damages for emotional distress and mental anguish. *Dean v. Municipality of Metro Seattle*, 104 Wn.2d 627, 640-41, 708 P.2d 393 (1985); *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 58, 573 P.2d 389 (1978). Damages result from the injury, the discrimination; a plaintiff need not prove outrageous and extreme conduct or severe emotional distress. *Dean.*

The sexual harassment awards were for $7,500 each, except Ms. Hellums. There was ample testimony by all of the waitresses that Mr. Parker's conduct upset them. They described their feelings of anger, disgust, degradation, belittlement and frustration that nothing was done about it.

Some were observed in tears by others. There was competent evidence the waitresses being compensated for sexual harassment suffered emotional distress.

The retaliation awards were for $15,000 each. There was testimony: Mr. Barlow and Mr. Cahoon taunted the waitresses on the picket line; Mr. Cahoon ridiculed the picketers by putting, *visible from the freeway*, the message on the electric reader board, "Let our ladies wave you in"; Mr. Cahoon intimidated them by threatening none of them would ever work again in the Yakima Valley. The waitresses testified they joined the picket line because they felt it was the only option available considering the inaction of Amikay upper management. There was competent evidence each waitress suffered emotional distress as a result of being forced to find work elsewhere.

The waitresses' injuries were similar. The judge who presided over the trial and observed the witnesses, jurors, parties and counsel, declined to reduce the damage awards or to grant a new trial. Amikay has not established an abuse of discretion.

The waitresses request reasonable attorney fees on appeal pursuant to RAP 18.1, RCW 49.60.030(2), and *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 450, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992). RCW 49.60.030(2) provides a person injured by a discriminatory act may collect costs and reasonable attorney fees as part of his or her recovery, together with actual damages. Attorney fees are appropriate, *Blair v. WSU*, 108 Wn.2d 558, 571-72, 577, 740 P.2d 1379 (1987); *Pannell*, and are awarded in an amount to be determined by our court commissioner. RAP 18.1(f).

The judgments of the Superior Court are affirmed.

THOMPSON and SWEENEY, JJ., concur.