[No. 38023-1-I. Division One. December 13, 1999.]

BEVERLY BROWN, *Appellant*, v. SCOTT PAPER WORLDWIDE COMPANY, ET AL., *Respondents*.

350

*Mark G. Olson*, for appellant.

*Thomas A. Lemly* and *Linda Gayle White Atkins* of *Davis Wright Tremaine*, for respondents.

KENNEDY, C.J. — Beverly Brown appeals the dismissal on summary judgment of her claim of disability discrimination against her employer, Scott Paper Worldwide Company (Scott Paper) and against six of its managers, and her claim of sexual discrimination and sexual harassment against the six managers individually (the managers). Brown contends that the trial court erred in ruling as a matter of law (1) that the evidence was insufficient to establish that the defendants had notice of her alleged disability before Scott Paper took the adverse employment action and (2) that the managers could not be sued individually for employment discrimination.[1] After the summary judgment ruling, Brown's claims of sexual harassment and sexual discrimination against Scott Paper were tried to a jury, which rendered a defense verdict. Brown does not appeal the judgment in favor of Scott Paper that followed the jury verdict. The managers contend that even if the trial court erred by dismissing the sexual discrimination and harassment claims against them, under the doctrines of res judicata and collateral estoppel the jury verdict finding Scott Paper not liable for sexual harassment and discrimination bars Brown from making identical claims against the managers. We affirm the summary dismissal of the disability discrimination claim, but reverse the summary dismissal of the sexual discrimination and harassment claims against the managers individually. Individual managers who meet the statutory definition of employers may be held liable for their own acts in violation of RCW 49.60. Brown is not barred from proceeding with her sexual discrimination and harassment claims against the managers by the doctrine of res judicata or collateral estoppel, because we cannot conclusively determine from the trial record whether the

---

[1]Our opinion affirming the trial court with respect to the disability claim lacks precedential value and is, therefore, treated in the unpublished portion of this opinion.

jury rendered a defense verdict based on a defense that was personal to Scott Paper.[2]

### FACTS

Beverly Brown began to work for the Scott Paper mill in Everett, Washington, in 1979. Over the years, although Brown progressed through the seniority system at the mill, her employment was not without problems. Brown filed three administrative charges of sexual discrimination with the Equal Employment Opportunity Commission (EEOC) during her employment with Scott Paper, none of which resulted in a "reasonable cause" finding by that agency. In 1991, Brown was temporarily disqualified from advancement in the paper mill on alleged grounds of her lack of technical knowledge and leadership skills, her inability to work as a team member, and her admitted overreaction to job-improvement counseling—in response to which she alleged that certain Scott Paper managers were "setting her up" for termination. Scott Paper rescinded the disqualification after Brown filed a grievance with her union.

In June of 1994, Brown was suspended for kicking a coworker. Following an investigation, Scott Paper offered to consider returning Brown to work if she acknowledged her difficulties in controlling her anger and emotions, coping with job stress, and working as a member of a team, and developed a plan to address those difficulties. In response, Brown submitted a letter from Donald Uslan, a psychotherapist and rehabilitation counselor with whom Brown consulted after her suspension, proposing a six-month plan of psychotherapy, biofeedback, medical evaluation, and

---

[2]This court first issued its opinion in this case on January 26, 1998. At that time, the record on appeal with respect to the trial consisted of the complaint and answer, the jury instructions and the parties' Stipulation Regarding Trial Theories submitted at the request of this court pursuant to RAP 9.10. Thereafter, the individual managers submitted a motion for reconsideration, asking, among other things, to supplement the record to provide the full trial transcript. In response to the motion, we withdrew our opinion, granted the motion to supplement the record, and called for additional briefing on the issue of res judicata, reserving our ruling on the remainder of the motion for reconsideration. In this opinion, we adhere to our earlier ruling, thereby denying the motion for reconsideration.

anger management therapy with his office. After meeting with Brown to evaluate her efforts to address her difficulties, Scott Paper rejected Brown's proposed plan and converted her suspension into a discharge, stating:

> Mr. Uslan's counseling plan, developed at the request of your attorney, is excellent. . . . [H]owever,] . . . Mr. Uslan is not the one who will have to interact with Scott employees and managers in the future. You are the one that had to acknowledge your problems and develop a plan to correct them to avoid further disruptions in the mill. Unfortunately, we did not hear any evidence that you had a plan for successful reentry into the work place. You could not articulate the significant problems that le[a]d you to conflict and you continue to minimize the assault both in terms of severity and through fabrication of provocation. This continuing deflection of fault calls into question the sincerity of your apology and does not give the Company any assurance unprovoked assault or other interpersonal problems will not occur again in the future.
>
> You have failed to convince the Company per the terms of [the offer to return to work] and the Suspension is converted to Discharge.

Clerk's Papers at 84. Scott Paper further stated that Brown's continued denial of wrongdoing and refusal to acknowledge her inability to handle stress, control her anger and emotions, and work as a team member indicated her "inability to understand that [she had] significant problems" in those areas and/or that she was misrepresenting her role in the assault. *Id.* Brown filed another grievance with her union and, following an arbitrator's decision, was returned to work as a machine tender, her assigned position based on the seniority system in place.

Several months later, Brown filed suit alleging, inter alia, discrimination on the basis of sex and disability and sexual harassment against Scott Paper and six of its managers individually. The defendants moved for summary judgment as to the disability discrimination claim, contending that there were no facts to support that cause of action. The managers moved for summary judgment as to the sexual

harassment and sexual discrimination claims, contending that those claims, as well as the claim for disability discrimination, were not properly brought against them because individuals are not "employers" under Washington's Law Against Discrimination, chapter 49.60 RCW. The court granted summary judgment dismissing Brown's disability discrimination claim, concluding that there was no issue of fact as to whether the defendants knew or should have known that Brown suffered from a condition defined as a handicap. The court also granted summary judgment dismissing Brown's claims under RCW 49.60 against the individually named managers. Brown's sexual discrimination and sexual harassment claims against Scott Paper went to trial, resulting in a jury verdict for the defense.[3]

Brown appeals the summary judgment rulings. We apply the usual standard of review of summary judgments. *See, e.g., Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 23, 851 P.2d 689 (1993).

## DISCUSSION
### I

Brown challenges the trial court's dismissal of her claims of sexual discrimination and harassment against the individual managers named in her complaint. The managers moved for summary dismissal of those claims on the ground that they were not "employers" as required by RCW 49.60.180 and, therefore, could not be held personally liable.

RCW 49.60.180 provides that it is an unfair practice for any "employer" to discharge any person from employment or discriminate against any person in the terms of employment because of sex or the presence of sensory, mental, or physical disability. RCW 49.60.180(2), (3). As defined by the

---

[3]The trial evidence, jury instructions and the parties' respective theories at trial will be discussed in connection with the res judicata and collateral estoppel contentions.

act, an "employer" is "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons[.]" RCW 49.60.040(3). "Person" includes one or more individuals; it also includes, inter alia, any manager, agent or employee. RCW 49.60.040(1). Brown contends that the eight-employee threshold requirement means only that the *workplace* must employ eight or more employees, not that the "person" being held liable is required to employ eight or more employees. The managers argue in response that because only those employers employing eight or more persons can be liable for employment discrimination under RCW 49.60.180, managers and other individual employees cannot be employers under that section because it is the employer, and not its managers or other individual employees, that does the employing. The managers also point out that under corresponding federal law, individual managers or supervisors are not employers subject to liability. *E.g., Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). Under *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988) federal cases construing federal statutes prohibiting discrimination in employment may provide persuasive although not binding authority with respect to the construction of corresponding provisions in the Washington statute, where no different meaning is apparent from the language of the Washington statute.

We find the language of RCW 49.60.040(3) defining "employer" to be ambiguous. Read literally as punctuated, it would appear to be the "person acting in the interest of an employer, directly or indirectly," who must employ eight or more persons, rather than the employer itself. But this literal reading would render the phrase "any person acting in the interest of an employer, directly or indirectly" superfluous and without any practical meaning, in that, in virtually every instance of which we can conceive, it is, indeed, the employer, and not its managers or other individual employees, that does the employing. Thus, the managers' proposed construction would violate that most

elementary of rules of statutory construction, that courts should avoid leaving any statutory language without effect. *E.g., Becker v. Pierce County,* 126 Wn.2d 11, 17, 890 P.2d 1055 (1995). We can conceive of no reason why the Legislature would have included "any person acting in the interest of an employer, directly or indirectly" in its definition of "employer" if it had not intended to extend liability to such "person" (as further defined in RCW 49.60.040(1)) for his or her conduct in violation of RCW 49.60.180, when it amended the chapter in 1973 to create private causes of action.[4]

Our construction is buttressed by our Supreme Court's recent opinion in *Griffin v. Eller,* 130 Wn.2d 58, 922 P.2d 788 (1996). There, a legal secretary sued her attorney employer, a sole-practitioner who had never employed eight or more persons, for sexual discrimination. The *Griffin* court held that employers of fewer than eight employees are simply exempt from the provisions of chapter 49.60, *id.* at 64, and further held that this application did not violate the State's privileges and immunities clause, CONST. art. I, § 12. *Id.* at 70. In the course of the constitutional ruling (applying the rational basis test), the court reasoned:

> The Legislature may have had many reasons to adopt the small employer exemption in RCW 49.60. Certainly the State has a substantial interest in the well-being of small business with regard to the state economy, tax base, and opportunities for employment. Approximately 75 percent of business establishments in Washington have fewer than nine employees; however, they employ only about 17.5 percent of the private employee work force. The Legislature could well have concluded burdening so many employers to benefit so few employees was not, on balance, of sufficient public benefit to offset the burden.

---

[4]As originally enacted, chapter 49.60 RCW did not create a private cause of action; it was amended to that effect by LAWS OF 1973, ch. 141. In *Griffin v. Eller,* 130 Wn.2d 58, 922 P.2d 788 (1996) the majority rejected the reasoning of the dissenting justices, who believed that the Legislature intended the eight-employee threshold to apply only as a limitation upon the jurisdiction of the Human Rights Commission to investigate complaints and not as a limitation upon private causes of action under the 1973 amendment. *See id.* at 63-64 (majority) and at 75-79 (Talmadge, J., dissenting).

*Griffin*, 130 Wn.2d at 68 (citation omitted). Thus, it would appear that the Legislature's rational basis for the eight-employee threshold may have been to protect small employers. Such purpose would not be furthered by providing protection from lawsuits to managers or other individual employees "acting in the interest of an employer, directly or indirectly," who are employed by large corporations such as Scott Paper.

The managers argue, nevertheless, that the Legislature did not intend to extend the right of private action against managers or other individual employees who may commit unfair practices, even if they are acting in the interest of an employer directly or indirectly, because the Act as a whole is directed at employers as entities, who may in turn be liable for the acts of their managers and individual employees if they know or should have known of the unfair practice and do not take prompt and reasonable steps to remedy the problem. We agree that the Act must be considered as a whole, to ensure that all parts of the statutory scheme operate in harmony with judicial construction of any given ambiguous provision. *See, e.g., State v. Malone*, 106 Wn.2d 607, 610-11, 724 P.2d 364 (1986); *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). We also agree that in the appropriate circumstances the Act provides liability for employers for the acts of managers and other individual employees. But contrary to the managers' argument, the Act specifically provides for liability of "persons" who do not fit the definition of "employer" but who "aid, abet, encourage, or incite the commission of any unfair practice, or [who] attempt to obstruct or prevent any other person from complying with the provisions of [chapter 49.60] or any order issued thereunder." RCW 49.60.220. It would be a strange construction of the Act for the court to conclude that managers who are acting in the interest of an employer directly or indirectly and who, thus, are included as employers under RCW 49.60.040(3), nevertheless cannot be held individually liable for their own acts except by an aiding and abetting theory under RCW 49.60.220.

In any event, subsection .220 illustrates that the Legislature did not intend to preclude individual liability of managers and other individual employees for their own acts. Although Brown did not sue the managers on an aiding and abetting theory, we deem this to be irrelevant, in light of the definition of "employer" contained in the Act, and in light of the managers' concession in their responsive brief for this appeal that they were at all relevant times employed by Scott Paper as managers and at all relevant times acted as agents for Scott Paper. *See* Resp'ts' Br. at 1-2.

In sum, the trial court erred in dismissing Brown's claims for sexual discrimination and sexual harassment against the managers on the ground that Washington law permits recovery, if at all, only against Scott Paper and not against its managers "acting in the interest of [Scott Paper], directly or indirectly" as provided by RCW 49.60.040(3). Such managers may be sued individually for their own acts in violation of RCW 49.60.

## II

The managers contend that even if the trial court erred in ruling that they could not be sued individually, the jury verdict finding Scott Paper not liable for sexual discrimination and harassment precludes Brown's identical claims against the managers individually. Specifically, the managers argue that "[b]ecause Scott Paper can only act through its employees, and has vicarious liability for its employees' acts, the jury's determination that Scott Paper did not discriminate against Brown effectively determines that Scott Paper's employees did not discriminate against Brown." Resp'ts' Br. at 43. In support, the managers cite the RESTATEMENT (SECOND) OF JUDGMENTS § 51:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, . . .
>
> (1) A judgment against the injured person that bars him from

reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person . . . unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

We agree that this section of the RESTATEMENT is applicable, but it does not help the individual managers.

■ To prevail on a sexual harassment claim against an employer for its supervisors' or employees' misconduct, the plaintiff must prove that the employer knew or should have known about the harassment and failed to take reasonably prompt and corrective action. This may be shown by proving that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to raise an inference of the employer's knowledge or constructive knowledge and that the employer's remedial action was not of a nature as to have been reasonably calculated to end the harassment. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985).

But to prevail in a claim against an individual supervisor, a plaintiff need establish only that the supervisor, while acting as an employer under RCW 49.60.040, sexually harassed the employee—she need not also prove that the overall employer knew or should have known about the harassment and failed to take remedial action reasonably calculated to end the harassment. These are two distinct causes of action. Given the various defenses presented by Scott Paper at trial, and the general verdict, we cannot determine from the record that the defense verdict was not based on a defense that was personal to Scott Paper.

Brown presented evidence from which the jury could have determined that Brown was subjected to sexual harassment or discrimination by her co-workers, or by the

individual managers, or by both groups, but there is also evidence from which the jury could have determined that Scott Paper, as the overall employer, took prompt and immediate remedial action of a nature reasonably calculated to end the harassment once complaints were made to higher management.

In her complaint, Brown alleged that the six managers and other male employees of Scott Paper subjected her to a work environment that was hostile to her gender. She alleged that the six managers and other male employees engaged in objectionable conduct, including continuously subjecting her to unwanted sexual overtures, lewd sexual discussions, jokes and comments, and unwanted touching of a sexual nature. Brown alleged that Scott Paper was or should have been aware of the sexual harassment and failed to take effective action against male managers and other male employees at the plant who created a hostile work environment for Brown on account of her gender. She alleged that on at least one occasion Scott Paper took adverse employment actions against her because she rebuffed the sexual advances of a superior (not one of the named managers). Brown alleged that she was constantly subjected to undue harassment, discipline and reprimands by her superiors which were not leveled against her male co-workers. Brown alleged that she complained to her superiors about the harassment and disparate treatment and was retaliated against by poor evaluations, reprimands from supervisors, less favorable working conditions and, ultimately, termination from employment. Brown also alleged that Scott Paper failed to exercise ordinary care in supervising its male managers and other male employees by failing to take effective action to stop the harassment, intimidation, and degradation. Each of the six managers testified at the trial and was subject to cross-examination regarding the allegations about his own conduct that Brown claimed gave rise to the complaint against Scott Paper. Brown presented sufficient evidence from which a rational trier of fact could have determined that any or all of the allegations in her complaint were true.

Scott Paper defended on several theories: any sexual conduct that occurred was not unwelcome because it was initiated and encouraged by Brown herself; any harassment did not affect the terms or conditions of Brown's employment because Brown willingly participated in crude sexual jokes and discussions with her co-workers and she habitually used obscene language in the workplace and initiated discussions about sexual topics, boasting to co-workers about her sexual exploits; Brown failed to notify upper-level management that she was being subjected to unwanted conduct of a sexual nature by lower-level managers until 1995, and once she finally complained at the appropriate managerial level, Scott Paper took prompt remedial action that was reasonably calculated to remedy the unwanted conduct. Scott Paper presented sufficient evidence in support of each of its defense theories from which a rational trier of fact could determine that any or all of them were true.

Insofar as here relevant, the jury was instructed as follows:

Defendant Scott Paper Worldwide Company is a corporation. A corporation can act only through its officers and employees. Any act or omission of an officer, manager, supervisor or employee is the act or omission of the corporation.

An employer may be liable for the acts and omissions of its officers and employees even when those acts or omissions violate the employer's policy, unless the employer takes prompt and adequate action to remedy such acts or omissions.

For purposes of the Plaintiff's claim of a hostile work environment created by sexual harassment, you will be instructed separately as to the conditions under which the acts of employees may be imputed to the Defendant corporation.

Clerk's Papers at 300 (Instruction 3).

Sexual harassment constitutes illegal discrimination in the terms or conditions of employment because of sex. Sexual harassment includes verbal or physical workplace conduct of a sexual nature that was unwelcome, gender motivated, and

pervasive enough that a reasonable woman would find that it affects the terms or conditions of her employment. Unwelcome sexual conduct constitutes sexual harassment when it creates an intimidating, hostile, or offensive working environment, even if it leads to no tangible or economic job consequence.

Clerk's Papers at 303 (Instruction 6).

The jury was further instructed that the elements of a sexual harassment claim are:

(1) that [Brown] was subjected to harassment because of her sex; (2) that the harassment was unwelcome; (3) that the harassment affected the terms and conditions of her employment; and (4) that the management of the defendant knew or should have known of the harassment and failed to take reasonably prompt and adequate corrective action.

Clerk's Papers at 304 (Instruction 7). The jury was further instructed that:

In order for you to find that management of the defendant should have known of the harassment, you must find that the harassment was so pervasive in the workplace that management should have been aware of it.

In determining whether management should have known of the harassment, it is also relevant to consider: (a) [w]hether defendant had established a clear, written policy prohibiting sexual harassment; (b) [w]hether plaintiff was aware of that policy and understood to whom she should complain if she were to suffer from sexual harassment; (c) [w]hether the manager to whom plaintiff was supposed to complain under the policy was the alleged harasser; and (d) [w]hether the defendant enforced this policy effectively.

Clerk's Papers at 308 (Instruction 11).

The jury entered a general verdict in favor of Scott Paper. Based on the evidence and the instructions, the jury could have found in favor of Scott Paper because (1) Brown failed to persuade the jury that she was subjected to sexual discrimination or harassment at all, by anyone, including the six managers; or (2) Scott Paper persuaded the jury

that any sexual conduct in the workplace was welcomed by Brown, even initiated by her, so that she was not subjected to a hostile work environment based on her gender; or (3) Brown persuaded the jury that she was subjected to sexual discrimination and harassment, including discrimination by the six managers, but Scott Paper persuaded the jury that she failed to complain at the appropriate higher managerial level in accord with Scott Paper's clear written policies, which she fully understood, until 1995, and when she finally did complain at the appropriate managerial level, Scott Paper took prompt and adequate action. Under the first and second possibilities, assuming, of course, that Brown presented all of the evidence at the trial that she could have presented to support her claims against the individual managers—something we cannot ascertain from the trial transcript[5]—Brown would be precluded from proceeding with her claim against the managers by the doctrines of res judicata and collateral estoppel; but under the third possibility Brown's claims against the six managers would survive because the defense of prompt and adequate action is personal to Scott Paper, its liability being of a vicarious nature.

██ Res judicata, or claim preclusion, bars the relitigation of claims and issues that were litigated, or might have been litigated, in a prior action. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Application of the doctrine requires identity between a prior judgment and a subsequent action as to (1) persons and parties, (2)

---

[5]The managers want us to assume that Brown presented all of the evidence she had against the managers individually, in her effort to prove liability as against Scott Paper. But we cannot make this assumption. If Brown had evidence that the individual managers sexually discriminated against her in their capacity as employers but had no evidence that higher management at Scott Paper knew or should have known about it, such evidence would be irrelevant in her case against Scott Paper—but would be relevant to her claim against the individual managers. On the other hand, if no evidence exists from which a rational trier of fact could determine that the individual managers themselves engaged in sexual discrimination or harassment of Brown, they should have no problem getting her claims against them dismissed on summary judgment. Our ruling does not preclude a request for summary judgment on grounds that there is no genuine issue of material fact regarding whether the individual managers or any of them sexually discriminated against Brown.

cause of action, (3) subject matter, and (4) the quality of persons for or against whom the claim is made. *Id.* Collateral estoppel, or issue preclusion, prevents relitigation of an issue after the party estopped has already had a full and fair opportunity to present its case. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993). The requirements for application of the doctrine are:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice.

*Id.* at 562 (footnote omitted).

Here, the issues decided in the trial against Scott Paper are not identical in that the jury was never asked to decide whether the individual managers in their capacity as employers themselves discriminated against Brown or sexually harassed her. The individual managers were in privity with Scott Paper insofar as the alleged harassment by Brown's co-workers, but not with respect to their own potential liability as individuals, for they were not parties to the case that went to trial. As our Supreme Court has noted: "Res judicata [claim preclusion] and collateral estoppel [issue preclusion] [are] kindred doctrines designed to prevent relitigation of already determined causes and curtail multiplicity of actions and harassment in the courts, [and] are at times indistinguishable and frequently interchangeable." *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967). If it were necessarily true, as argued by the managers, that the jury heard all the available evidence against the managers and necessarily determined that none of the managers engaged in sexual discrimination or harassment of Brown, or that any sexual conduct on their parts was welcomed by Brown, even initiated by her, we would have no difficulty in applying either doctrine. Although the managers were no longer parties by the time of the jury trial, the employer-employee relation-

ship satisfies the requirement of res judicata that the "quality" of the persons against whom Brown brought the claims must be identical, where the employer's liability is premised entirely on the action of its employees. *Kuhlman v. Thomas*, 78 Wn. App. 115, 121-22, 897 P.2d 365 (1995). But the potential liability of the individual managers in their capacity as employers for their own conduct falls outside this parameter.

The requirement for identical causes of action also requires the reviewing court to consider whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action. *Id.* at 122. Similarly, the doctrine of collateral estoppel requires the court to consider whether application of the doctrine would work an injustice, as well as identity of issues, privity of parties and a final judgment on the merits. *Hanson*, 121 Wn.2d at 562. Here, no rights or interests of Scott Paper established in the final judgment would be destroyed or impaired by prosecution of the second action. Moreover, the six managers are not immune from liability for their own unlawful acts, if any, performed in the interests of their employer, directly or indirectly. Thus, they cannot benefit from either preclusion doctrine unless they can establish that the jury necessarily rendered its judgment in favor of Scott Paper based on all the available evidence against the individual managers and on a determination that the managers did not engage in unlawful conduct. This, they cannot do, in light of the fact that the individual managers were not defendants at the trial, and in light of the general verdict.

The managers argue, without citation to authority, that they would be entitled to the same defenses at trial as Scott Paper, at any new trial. At first blush, this argument has some facial appeal, in spite of the lack of citation to authority. Brown has not pleaded an aiding and abetting theory of liability against the managers. Rather, she argues that they, too, are "employers" as defined by RCW 49.60.040(3). Why, then, the managers may well ask, are they not entitled to

all the same defenses as were raised by Scott Paper? The answer lies in the differing natures of their potential liability.

Scott Paper's potential liability for the allegedly unlawful conduct of its six managers was vicarious and could be avoided by establishing that it took prompt and adequate corrective action reasonably calculated to end the discrimination, upon learning that Brown was being discriminated against by her supervisors. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 407-08, 693 P.2d 708 (1985). Where supervisors or managers are themselves the discriminators or harassers, the unlawful conduct may be imputed to the employer, but liability may still be avoided if the employer shows either that the plaintiff failed to complain to higher managerial supervisory personnel, so that the employer did not know about the unlawful conduct by its lower-level supervisors, or if the plaintiff failed to show that the conduct was of such a pervasive nature as to create an inference of knowledge. Even where knowledge is shown or inferred, the employer may nevertheless *still* escape liability by showing that it took prompt remedial action of such a nature as to end the harassment. *Glasgow*, 103 Wn.2d at 407; *accord Delahunty v. Cahoon*, 66 Wn. App. 829, 836-37, 832 P.2d 1378 (1992). These "liability escape hatches" are available to the employer whose potential liability is of a vicarious nature because RCW 49.60 "does not impose a duty on the employer to maintain a pristine working environment. Rather, it imposes a duty on the employer to take prompt and appropriate action when it knows or should know of co-employees' conduct in the workplace amounting to sexual harassment." *Glasgow*, 103 Wn.2d at 406 (quoting *Continental Can Co. v. State*, 297 N.W.2d 241, 249 (Minn. 1980). No such "escape hatches" are available to the manager who himself fits the definition of an "employer" and who himself engages in the unlawful conduct, for he cannot claim lack of knowledge of the very unlawful conduct in which he engages; neither can he claim that the plaintiff failed to show that he failed to take prompt and effective remedial action to cure his own unlaw-

ful acts. His only defenses (in a case where no aiding and abetting theory is pleaded or proved pursuant to RCW 49.60.220) are that he did not, in fact, engage in the unlawful conduct, or that his conduct was not unwelcome, or that he was not an "employer" under the Act, i.e., that he was not acting in the interests of the employer, directly or indirectly, and accordingly did not violate RCW 49.60.180, which provides that it is an unfair practice for any "employer" to discriminate against any person in the terms of employment because of sex or the presence of a sensory, mental or physical disability.[6]

In sum, to the extent that Brown can show that the individual managers or any of them personally engaged in sexual discrimination or harassment of her in their capacity as employers, she is not precluded from trial of her claims for sexual harassment and discrimination against those managers. Accordingly, we reverse the summary judgment ruling dismissing the individual managers from the suit, and remand for such further proceedings as shall be consistent with this opinion.

The remainder of our opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040.

WEBSTER and ELLINGTON, JJ., concur.

Review granted at 140 Wn.2d 1021 (2000).

---

[6]*Compare Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997) ("Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable.").