20 P.3d 921 (2001)
143 Wash.2d 349
Beverly BROWN, Respondent,
v.
SCOTT PAPER WORLDWIDE COMPANY, Ray Jones, Gary Zimmerman, Charlie Garneski, Brian Martin, William Bombardier, and James R. Lockhard, Petitioners.
Terry Raymond, husband, Carmella J. Raymond, his wife, and the marital community comprised thereof, Petitioners,
v.
Pacific Chemical, a division of Pace International, L.P., S/L III, Inc., a Washington corporation; Richard Hunter and Jane Doe Hunter, and the marital community comprised thereof; Glen Gay and Karen Gay, and the marital community comprised thereof; William Boring and Pam Boring, and the marital community comprised thereof; and Phil Ward and Kay Ward, and the marital community comprised thereof, Respondents.
Nos. 69067-7, 69155-0.
Supreme Court of Washington, En Banc.
Argued October 26, 2000.
Decided April 5, 2001.
*923 Kristin E. Sweeney and Thomas A. Lemly of Davis Wright Tremaine, Seattle, for Petitioners Scott Paper, et al.
A. Richard Maloney, for Petitioners Terry Raymond, et al.
Mark Gregory Olson, Everett; Lane, Powell, Spears, Lubersky, Ralph Crockett Pond, Seattle, for Respondents Pacific Chemical et al.
Miller, Nash, Wiener, Hager & Carlsen, James Ralph Dickens, Francis L. Dan Dusen, Jr., Susan Kathleen Stahlfeld; Keating, Bucklin, McCormack, Stewart Andrew Estes, Seattle, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Cairncross, Hempelmann, Rosemary Daszkiewicz, Diana S. Shukis, Seattle, Amicus Curiae on Behalf of Robert D. Green.
Jeffrey Lowell Needle, Michael Craig Subit, Seattle, Amicus Curiae on Behalf of Washington Employment Lawyers Association.
Debra Leigh Stephens, Bryan Harnetiaux, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Assoc.
*922 JOHNSON, J.
This case consolidates two separate appeals containing one common issue and one separate issue. The common issue is whether a supervisor who discriminates against an employee can be held individually liable under Washington's law against discrimination, chapter 49.60 RCW. In these cases, two separate panels of the Court of Appeals,, reached different conclusions. Brown v. Scott Paper Worldwide Co., 98 Wash.App. 349, 989 P.2d 1187 (1999) (supervisors can be held individually liable); Raymond v. Pac. Chem., 98 Wash.App. 739, 992 P.2d 517 (1999) (supervisors cannot be held individually liable). Under the language of chapter 49.60 RCW, we hold supervisors, along with their employers, can be held liable for their discriminatory acts.
*924 Additionally, Terry Raymond challenges the dismissal of his wrongful discharge claim against his employer for terminating him in violation of an employee handbook. The Court of Appeals held Raymond was an at-will employee and, thus, was not entitled to the protections provided in the handbook. We reverse on this issue.

FACTS

Brown v. Scott Paper Worldwide Company
These facts are relevant to the common issue of supervisor liability. In 1979, Beverly Brown (Brown) began work in the paper mill at the Scott Paper Worldwide Company (Scott Paper) in Everett, Washington. She was the first woman employed in the paper mill and remains one of the few women there. On May 1, 1995, Brown was promoted to the highest union position in the mill and the lead position on the paper machine. Despite this, Brown says she endured years of sexual harassment at the paper mill where she was shunned by coworkers, was the victim of pranks, and was referred to in derogatory, sexist terms such as "boobs" and "beaver" Brown.
In June 1991, James Lockhard (Lockhard), Brown's human resources manager, temporarily disqualified Brown from advancement in the paper mill on the grounds she lacked technical knowledge and leadership skills, lacked the ability to work as a team member, and overreacted to job improvement counseling. This was the only time Scott Paper had disqualified anyone within the paper machines of the mill. Brown believed certain Scott Paper managers were setting her up for termination. Scott Paper rescinded the disqualification after Brown filed a grievance with her union.
In June 1994, Lockhard suspended Brown for kicking a coworker. Following an investigation, Scott Paper offered to return Brown to work if she acknowledged and developed a plan to control her emotions, cope with job stress, and work as a team member. In response, Brown submitted a letter from Donald Uslan (Uslan), a psychotherapist and rehabilitation counselor with whom Brown consulted after her suspension. Uslan proposed a six-month plan of psychotherapy, biofeedback, medical evaluation, and anger management therapy with his office.
After meeting with Brown to evaluate her efforts, Scott Paper rejected the proposed plan, stating:
Mr. Uslan's counseling plan, developed at the request of your attorney, is excellent.... [H]owever, ... Mr. Uslan is not the one who will have to interact with Scott employees and managers in the future. You are the one that had to acknowledge your problems and develop a plan to correct them to avoid further disruptions in the mill. Unfortunately, we did not hear any evidence that you had a plan for successful reentry into the work place. You could not articulate the significant problems that [led] you to conflict and you continue to minimize the assault both in terms of severity and through fabrication of provocation. This continuing deflection of fault calls into question the sincerity of your apology and does not give the Company any assurance unprovoked assault or other interpersonal problems will not occur again in the future.
You have failed to convince the Company per the terms of [the offer to return to work letter] and the Suspension is converted to Discharge.
Clerk's Papers at 84. In response, Brown filed a grievance with her union. At the hearing, Uslan testified that Brown was clinically depressed. Following a union arbitrator's decision, Brown was returned to work in her previously assigned position in January 1995.
Less than one month later, Brown filed suit in superior court claiming she had been sexually harassed and discriminated against on the basis of sex and disability. She named Scott Paper and six of its supervisors (Supervisors) as defendants. The Supervisors moved for summary judgment, contending they were not "employers" under chapter 49.60 RCW. The superior court agreed, dismissing Brown's claims against the individually named Supervisors.
Brown appealed the summary judgment order. The Court of Appeals reversed, determining *925 the Legislature never intended to foreclose actions against individual supervisors. Brown, 98 Wash.App. 349, 989 P.2d 1187. The Supervisors petitioned this court for review, which we granted and consolidated with Raymond v. Pacific Chemical.

Raymond v. Pacific Chemical
Terry Raymond (Raymond) was a sales representative for Pacific Chemical, a division of Pace International, L.P. (Pacific Chemical), from May 1992 until September 18, 1996. Raymond organized the Puget Sound area and southeast Alaska territory to the satisfaction of his employer. However, this began to change when Pacific Chemical decided to restructure. On July 26, 1996, at a Friday afternoon meeting, Pacific Chemical informed Raymond he was being reassigned to Seattle and his compensation would be calculated differently. Previously, Raymond received commissions on his sales and a guaranteed minimum salary of $3,900 per month, resulting in earnings of approximately $66,800 in 1995. Under the new compensation plan, Terry would receive a base salary of approximately $54,720, a stipend for gas, and bonuses that reflected his sales performance. Raymond believed this formula would result in substantially lower pay.
The following Monday, Raymond went on his scheduled two-week vacation. Raymond asserts that upon his return he was picked on by his supervisors in an attempt to drive him out of the company. Pacific Chemical later claimed there were problems with Raymond's job performance, attire, reports, and interaction with customers and coworkers. Raymond denied this, alleging it was part of a scheme to drive out himself and other older salespersons.
Five weeks following Raymond's return from vacation, Pacific Chemical terminated him for insubordination. Raymond was 51 years old at the time. A younger and less experienced employee was assigned to his former sales area. Within a month of Pacific Chemical's restructuring, three other mature employees were either fired or encouraged to retire early even though they were some of the company's most experienced workers.
The Raymonds sued Pacific Chemical and several of Raymond's supervisors (Supervisors), alleging he was discriminated against due to his age in violation of chapter 49.60 RCW. The Supervisors moved for summary judgment, which the trial court granted. The Raymonds appealed the decision. The Court of Appeals, Division One, affirmed. The Raymonds petitioned this court for review, which we granted and now reverse.

ANALYSIS

I.
The common issue in these cases is whether supervisors may be individually liable for employment discrimination under chapter 49.60 RCW. Under RCW 49.60.180(1), it is an unfair practice for any employer to discriminate against a person in terms of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of a disability. The statute expressly mandates liberal construction in order to accomplish the broad purposes of the law. RCW 49.60.020. Therefore, we "view with caution any construction that would narrow the coverage of the law." Marquis v. City of Spokane, 130 Wash.2d 97, 108, 922 P.2d 43 (1996).
When interpreting chapter 49.60 RCW, we begin our analysis with the plain language of the statute. Martini v. Boeing Co., 137 Wash.2d 357, 365, 971 P.2d 45 (1999). The issue centers on the statutory definition of the term "employer." The statute defines "employer" as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(3). The grammatical structure of the sentence, specifically the placement of the phrase "directly or indirectly," gives rise to conflicting interpretations. The Supervisors urge us to interpret "employer" to mean a person who employs eight or more persons. On the other hand, Brown and Raymond suggest the term "employer" applies to any person acting in the interest of an employer who employs eight or more persons. Both panels of the Court of Appeals *926 recognized that the statute's grammatical structure gives rise to different interpretations. Yet, they, too, disagreed as to which reading was correct.
We find RCW 49.60.040(3), by its very terms, contemplates individual supervisor liability. We read the phrase "person acting in the interest of an employer, directly" standing alone and the following clause "who employees eight or more persons" as referring to the term "employer" and not to the whole phrase. Under this reading, a supervisor acting in the interest of an employer who employs eight or more people can be held individually liable for his or her discriminatory acts.
The Supervisors suggest we follow the approach taken under federal antidiscrimination statutes.[1] However, the interpretation of federal antidiscrimination laws is not directly applicable here because the language of RCW 49.60.040(3) is significantly different from corresponding federal law. See Martini, 137 Wash.2d at 372, 971 P.2d 45; Marquis, 130 Wash.2d at 111, 922 P.2d 43 (interpretation of federal antidiscrimination statutes is persuasive unless the provisions in those statutes differ from those in chapter 49.60 RCW). The state and federal statutes offer significantly different definitions of the term "employer." RCW 49.60.040(3) states: "`[e]mployer' includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons." Compare this to title VII, which states: "`employer' means a person engaged in an industry affecting commerce who has fifteen or more employees... and any agent of such a person." Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).
Not only do these provisions differ in grammatical structure, but they also differ in statutory construction. RCW 49.60.040(3) contains the word "includes," which is a term of enlargement. In contrast, title VII uses the word "means," which is a term of limitation. Queets Band of Indians v. State, 102 Wash.2d 1, 4, 682 P.2d 909 (1984) (citing 2A Norman J. Singer, Statutes and Statutory Construction § 47.07, at 82 (4th ed.1973)). Given these differences, federal case law is not helpful to our analysis here.
More germane to the issue at hand are those cases interpreting language similar to chapter 49.60 RCW. Four other jurisdictions have fair employment law statutes that define "employer" substantially the same. Of the four jurisdictions, only twothe District of Columbia and Ohiohave ruled on the question of individual supervisor's liability. Genaro v. Cent. Transp., Inc., 84 Ohio St.3d 293, 703 N.E.2d 782 (1999); Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873 (D.C.1998).[2] After reviewing the text of the controlling statutes, those courts concluded the definition of "employer," by its very terms, encompasses individual supervisor liability under the antidiscrimination statutes. Genaro, 703 N.E.2d at 785; Wallace, 715 A.2d at 889. This is consistent with our holding here.
*927 Not only do we find support for our holding in the text of the statute, but we also find support by looking at the statute in its entirety. The legislative intent to hold supervisors individually liable for acts of employment discrimination is evidenced by chapter 49.60 RCW's clear mandate to eliminate all forms of discrimination. RCW 49.60.010. The overarching purpose of the law is "to deter and to eradicate discrimination in Washington." Marquis, 130 Wash.2d at 109, 922 P.2d 43. The Supervisors suggest this purpose will not be undermined if supervisors are not held individually liable because the employers who are vicariously liable will hold supervisors accountable for their discriminatory actions. While this may be true, it does not necessarily follow that the Legislature chose to foreclose other options of prevention. Instead, we find the strong commitment to the elimination of discrimination suggests the Legislature intended both the individual supervisor who discriminates and the employer for whom he or she works to be held liable.[3]
Additionally, the Legislature's intent to hold supervisors personally liable is manifested in RCW 49.60.220. This provision states: "[i]t is an unfair practice for any person to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder." RCW 49.60.220. The inclusion of this provision establishes that the Legislature intended to reach individual wrongdoers in the workplace, not just the employers themselves. We agree with the Court of Appeals' observation in Brown v. Scott Paper Worldwide Company that it would be a strained construction to hold supervisors personally accountable for their acts when they aid another in discrimination but not accountable when their own actions are directly discriminatory. Brown, 98 Wash.App. at 357, 989 P.2d 1187.
The Supervisors also argue our holding here conflicts with our decision in Griffin v. Eller, 130 Wash.2d 58, 922 P.2d 788 (1996). There is no conflict. The issue presented in these cases is distinct from that in Griffin. See Roberts v. Dudley, 140 Wash.2d 58, 73-74, 993 P.2d 901 (2000) (indicating Griffin was a limited analysis regarding the constitutionality of small employer provision). In Griffin, this court was asked to determine whether the small business exception in RCW 49.60.040 violated the equal protection clause under a rational basis analysis. We concluded the small business exception represents a legislative decision about the type of work environment reached by the statutory provisions. Griffin, 130 Wash.2d at 66-70, 922 P.2d 788. Under our interpretation of the term "employer" here, only employers who employ eight or more employees, or persons working in the interests of employers who employ eight or more persons, are subject to suit. Thus, Griffin is not undermined; it is actually preserved.
The Supervisors also argue it would be incongruous to find the Legislature intended to allow civil liability to run against individuals while at the same time protecting small businesses. Taking the statute as a whole, however, the small business exception is a narrow exception to chapter 49.60 RCW's broad public policy to eliminate all discrimination in employment. The more incongruous position here would be to find that *928 the Legislature declared such a broad public policy against discrimination while at the same time protecting supervisors who directly discriminate against the employees they oversee.
We hold individual supervisors, along with their employers, may be held liable for their discriminatory acts. The plain meaning of RCW 49.60.040(3), by its very terms, encompasses individual supervisors and managers who discriminate in employment. Moreover, enabling employees to sue individual supervisors who have discriminated against them is consistent with the broad public policy to eliminate all discrimination in employment. The Court of Appeals decision in Brown is affirmed. The Court of Appeals decision in Raymond is reversed.

II.
As stated earlier, Raymond also challenges the dismissal of his wrongful discharge claim against Pacific Chemical for terminating him in violation of the employee handbook. The superior court dismissed the claim on summary judgment. The Court of Appeals affirmed. We reverse.
In May 1992, Raymond signed a "salesman agreement" with Pacific Chemical setting forth the employment relationship between the parties. It included a provision specifically characterizing his employment as at-will. Raymond was also given a document titled "terms of employment" which contained the general terms of his employment, including salary and title. This was reissued annually. The terms of employment document contained a space to be completed if there were an additional sales agreement in force. Throughout his employment, Raymond received new terms of employment annually, but the only sales agreement he signed was the one issued in 1992. The new terms of employment did not reference any operating sales agreement, even though a space was provided to do so.
In 1992, Raymond also received a company employee handbook describing, among other things, Pacific Chemical's termination policy. Raymond testified he read and relied upon the handbook, referring to it as the "Bible." A second edition of the handbook, substantially unchanged, was issued to Pacific Chemical employees in February 1994. The handbook's introduction refers to employees' rights and responsibilities while employed at Pacific Chemical. Under the heading "PROBATION AND TERMINATION," the handbook contains the following provision:
Prior to discharge, other than for reasons of severe breaches of discipline, an employee will be advised in writing that an unsatisfactory condition exists and be given a reasonable and definite period of time to clearly demonstrate improvement. If the warning does not produce satisfactory performance within the period designated in writing, the employee may be discharged.
Clerk's Papers at 584. Raymond was fired without written warning or a period of time to demonstrate improvement. After Raymond was terminated, he asked the company for an explanation. Pacific Chemical responded in a letter, stating:
You were terminated from the employment of Pacific Chemical because of your attitude towards the Company, its management, and for insubordination with respect to your reassignment and the supporting of the company toward its customers. Under the Pace International Employee Handbook page 8, we deem these actions as sever [sic] breaches of discipline and have therefore terminated your employment with this company.
Clerk's Papers at 171 (emphasis added). In his suit, Raymond claimed he was wrongfully discharged in violation of the employee handbook. Pacific Chemical moved for summary judgment and the trial court granted the motion. The Raymonds appealed the decision. The appellate court affirmed, concluding because the sales agreement plainly stated Raymond was an at-will employee, he could not reasonably have believed the termination policy stated in the employee handbook applied to him. Raymond, 98 Wash. App. 739, 992 P.2d 517. We reverse.
The issue is whether Raymond was an at-will employee or a contract employee entitled to rely upon Pacific Chemical's termination policy as set forth in the employee *929 handbook. This is an appeal from a summary judgment order. Therefore, we look to all the evidence submitted to the trial court, CR 56(c), and consider the facts and all reasonable inferences in the light most favorable to Raymond. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
Raymond asserts the Court of Appeals placed too much emphasis on the sales agreement and disregarded other documents and circumstances under which his employment contract was formed and modified. We agree. In Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990), we rejected the "plain meaning rule" in favor of the "context rule." As an aid in ascertaining the intent of contracting parties, a court may admit extrinsic evidence relating to the entire set of circumstances under which the contract was formed, including the subsequent conduct of the contracting parties and the reasonableness of the parties' respective interpretations. Berg, 115 Wash.2d at 667, 801 P.2d 222.
Whether the parties intended policies in an employment document to be part of their employment is an issue of fact subject to the Berg rule. Swanson v. Liquid Air Corp., 118 Wash.2d 512, 522-23, 826 P.2d 664 (1992). An employer's right to terminate an at-will employee can be contractually modified and, thus, can be qualified by statements contained in employee policy manuals or handbooks issued by an employer to its employees. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 228, 685 P.2d 1081 (1984). Absent a specific contractual agreement to the contrary, an employer's issuance of an employee policy manual or handbook may lead to obligations governing the employment relationship. Thompson, 102 Wash.2d at 229, 685 P.2d 1081. If an employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. Thompson, 102 Wash.2d at 230, 685 P.2d 1081.
In this case, the issue is not whether the employee handbook which did not contain a disclaimer promised specific treatment in specific circumstances. It did. Instead, the issue is whether the employee handbook was intended as part of Raymond's employment contract even though the 1992 sales agreement contained an at-will clause. When reviewing handbook policies, this court asks whether a reasonable person looking at the objective manifestations of the parties' intent finds the parties had intended the obligation to be part of the contract. Swanson, 118 Wash.2d at 523, 826 P.2d 664. We must, therefore, review all of the relevant documents and the subsequent conduct of the parties to determine whether Raymond was reasonable in his belief he could only be terminated in compliance with the employee handbook.
When Raymond was hired he was given two documents, the salesman agreement (containing the at-will provision) and the terms of employment. New terms of employment were later executed each year, but none referred to the existence of an operating sales agreement. No subsequent sales agreements were issued, despite a yearly review. Under these circumstances, the fact-finder could reasonably conclude there was no sales agreement in effect after 1992 and, thus, no at-will term applying to Raymond. Therefore, the fact-finder could determine when Raymond was given the employment handbook in 1994 promising specific treatment for termination, it effected a modification of his at-will status. The fact Pacific Chemical referred to the provisions in the employee handbook in its letter explaining why Raymond was fired provides additional support for our conclusion.
We conclude Raymond has raised an issue of material fact as to whether the employee handbook was part of the contract. Summary judgment is reversed and the case is remanded for trial.
ALEXANDER, C.J., SMITH, SANDERS, MADSEN, IRELAND, and BRIDGE, JJ., and GUY and TALMADGE, JJ.P.T., concur.
NOTES
[1] The United States Supreme Court has not yet addressed this issue, but most of the federal circuit courts have decided supervisors cannot be held liable under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. See Hiler v. Brown, 177 F.3d 542, 545-46 (6th Cir.1999) (dicta); Stubs v. Conoco, Inc., 76 F.3d 651 (5th Cir.1996); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 52 n. 2 (7th Cir.1995) (dicta); Smith v. Lomax, 45 F.3d 402 (11th Cir.1995); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir.1994); Miller v. Maxwell's Int'l Inc., 991 F.2d 583 (9th Cir.1993); but see Ball v. Renner, 54 F.3d 664 (10th Cir.1995) (leaving the question open). However, several federal district courts have suggested such a conclusion is not necessarily warranted. See Wyss v. Gen. Dynamics Corp., 24 F.Supp.2d 202 (D.R.I.1998); Speight v. Albano Cleaners, Inc., 21 F.Supp.2d 560 (E.D.Va.1998); Ostrach v. Regents of Univ. of Cal., 957 F.Supp. 196 (E.D.Cal.1997) (criticizing the Ninth Circuit's holding in Miller, but following it because the court was bound by it); Iacampo v. Hasbro, Inc., 929 F.Supp. 562 (D.R.I.1996).
[2] Under the Ohio statute, "employer" is defined as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Rev.Code. Ann. § 4112.01(A)(2) (Anderson) (emphasis added). Under District of Columbia law, "employer" is defined as "any person who, for compensation, employs an individual, except for the employer's parent, spouse, children or domestic servants, engaged in work in and about the employer's household; any person acting in the interest of such employer, directly or indirectly." D.C.Code Ann. § 1-2502(10) (Lexis) (emphasis added).
[3] Both supervisors and employers are potentially liable for violations under chapter 49.60 RCW. Employer liability is not based upon independent fault, but upon the theory of respondeat superior. Under this theory, we hold employers liable for social and economic policy reasons such as the employer's authority over the employee and the employer's deep pocket, not because they are directly at fault., See Wyss, 24 F.Supp.2d at 207-08 (citing Fowler v. Harper et al., The Law of Torts §§ 26.1-26.2 (2d ed.1986); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 69 (5th ed.1984)). The theory of respondeat superior does not take into consideration the fault of the employer. Yet, it does not have the effect of eradicating all fault. Fault still exists on the part of the actual wrongdoer. While the employer is liable for social and economic reasons, the supervisor remains liable for his or her own wrongful acts. Supervisors are liable when they affirmatively engage in discriminatory conduct. See, e.g., Tyson v. CIGNA Corp., 918 F.Supp. 836, 841-42 (D.N.J.1996), aff'd, 149 F.3d 1165 (3d Cir.1998). The employer, on the other hand, is liable when any of its employees, who are acting directly or indirectly in its interest, engage in discrimination. Tyson, 918 F.Supp. at 841-42. This is a policy choice embodied in chapter 49.60 RCW.