## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RCCH TRIOS HEALTH, LLC, a Delaware Limited Liability Company, | No. 57403-9-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| DEPARTMENT OF HEALTH OF THE STATE OF WASHINGTON and KADLEC REGIONAL MEDICAL CENTER, | |
| Respondents. | |

MAXA, P.J. – RCCH Trios Health LLC (Trios) appeals an administrative final order in which the Department of Health (DOH) denied Trios a certificate of need (CN) to perform elective percutaneous coronary interventions (PCIs).

Health care facilities without on-site cardiac services are allowed to perform elective PCIs only after obtaining a CN from DOH, which requires a showing of projected net need of at least 200 PCIs a year. For purposes of need forecasting, the definition of PCIs in the CN regulation is "cases as defined by diagnosis related groups (DRGs)" that involve certain cardiac procedures. WAC 246-310-745(4). To calculate net need, DOH gathers data from three sources: (1) the comprehensive hospital abstract reporting system (CHARS), (2) surveys DOH

No. 57403-9-II

sends out to PCI providers, and (3) clinical outcomes assessment program (COAP) data.  WAC 246-310-745(7).

DOH released a methodology that showed the net need for PCIs in each of 14 PCI planning areas using DRGs 246-251.  DOH calculated that the net need for PCIs in Trios's planning area would be 182, less than the 200 procedure threshold.

Trios, located in planning area 2, decided to apply to DOH for a CN in 2019 to perform elective PCIs.  At the time, Kadlec Regional Medical Center (Kadlec) was the only other hospital in planning area 2 that was performing elective PCIs.

Trios attempted to introduce data from sources other than DOH used as a part of its application to demonstrate that the net need for PCIs was over the 200 procedure threshold. Specifically, Trios identified 31 cases where PCIs had been performed but had not been coded under DRGs 246-251.  And Trios claimed that DOH should count PCIs performed on residents of planning area 2 in Oregon, Idaho, and a closed Walla Walla hospital that had not reported to DOH.  But DOH concluded that it could not consider Trios's sources and denied Trios's application.

Trios initiated a review procedure before an administrative health law judge (HLJ). Kadlec was allowed to intervene and filed a motion for summary judgment.  The HLJ granted summary judgment and affirmed DOH's CN denial in an initial order.  Trios appealed, and the review officer affirmed in a final order.  Trios then appealed the final decision to superior court, which denied Trios's petition for judicial review.

We hold that (1) the 31 PCIs not coded under DRGs 246-251 did not fall within the definition of PCIs in WAC 246-310-745(4) and therefore could not have been counted in the

2

No. 57403-9-II

determination of need, and (2) DOH's refusal to consider Trios's proffered data was not contrary to law because it was based on a reasonable interpretation of WAC 246-310-745(7) and WAC 246-310-745(9). Accordingly, we affirm the review officer's final order.

FACTS

*Background*

A medical provider can operate certain facilities and perform certain procedures in Washington only after obtaining a CN. RCW 70.38.105(3)-(4). Procedures requiring a CN include new tertiary health services. RCW 70.38.105(4)(f). Elective PCIs are tertiary services. WAC 246-310-700. The legislature directed DOH to adopt rules establishing criteria for the issuance of CNs for elective PCIs at hospitals that do not otherwise provide on-site cardiac surgery. RCW 70.38.128. DOH adopted such rules in WAC 246-310-700, et seq.

The definition of PCIs in the CN regulation, for purposes of need forecasting, is "cases as defined by [DRGs] as developed under the Centers for Medicare and Medicaid Services (CMS) contract that describe catheter-based interventions involving the coronary arteries and great arteries of the chest." WAC 246-310-745(4). DRGs are codes assigned to patients who are hospitalized. DOH identified the relevant DRGs for 2019 as DRGs 246-251, which typically are assigned to patients who receive PCIs. However, a different DRG might be assigned even if the patient received a PCI if another procedure outweighs the PCI or other factors make a different DRG more appropriate.

Hospitals with an elective PCI program must perform at least 200 adult PCIs per year by the end of the third year of operation. WAC 246-310-720(1). DOH will issue a CN for elective

3

No. 57403-9-II

PCIs to a new program only if projected unmet need within the relevant planning area meets or exceeds the minimum volume standard of 200 procedures. WAC 246-310-720(2).

WAC 246-310-745(7) states that the data sources for determining adult elective PCI volumes "include":

> (a) The comprehensive hospital abstract reporting system (CHARS) data from the department, office of hospital and patient data;
> (b) The department's office of certificate of need survey data as compiled, by planning area, from hospital providers of PCIs to state residents (including patient origin information, i.e., patients' zip codes and a delineation of whether the PCI was performed on an inpatient or outpatient basis); and
> (c) Clinical outcomes assessment program (COAP) data from the foundation for health care quality, as provided by the department.

In addition, WAC 246-310-745(9) states that the data used for evaluating CN applications "must be the most recent year end data as reported by CHARS or the most recent survey data available through the department or COAP data for the appropriate application year."

*CN Application*

Trios is a hospital in Kennewick. Trios is located in planning area 2, which includes Benton, Columbia, Franklin, Garfield, and Walla Walla counties. Trios began providing emergent PCI services in 2012 but does not employ interventional cardiologists.

DOH published a methodology that showed the projected need for PCIs in each planning area. DOH calculated that the net need for PCIs in planning area 2 would be 182.

Trios applied for a CN for elective PCIs in 2019. Trios acknowledged that DOH's assessment of 182 was below the 200 case requirement, but stated that it had identified a number of areas in which the methodology had missed data. First, Trios highlighted that there was no count or attempt to count residents of planning area 2 who received PCIs in either Oregon or Idaho. Second, Trios noted that a Walla Walla hospital closed in 2017 and did not report any

4

No. 57403-9-II

outpatient data in 2016 or 2017, which meant the hospital underreported PCIs.  Including data from those sources, Trios believed that the patient net need for PCIs would exceed 200.

During the review of Trios's application, DOH was able to access Oregon's inpatient database and updated the methodology to include these publicly accessible PCIs.  DOH's updated methodology increased the projected need from 182 to 188.

DOH opened the application for public comment.  DOH received comments from those opposing Trios's application, including Kadlec, the only facility in planning area 2 that could perform elective PCIs.

Trios also submitted comments.  Trios again commented that DOH should be able to consider the additional data from Idaho and the Walla Walla hospital that Trios submitted because although WAC 246-310-745(7) lists CHARS, survey data and COAP as data sources, it does not say that DOH is limited to only those three sources.  Trios also commented that it had located an additional 31 PCIs in the CHARS database identified by their ICD-10 procedure code that were not coded under DRGs 246-251.  Trios commented that DOH should include these PCIs in the projected need calculation.[1]

In February 2020, DOH denied Trios's CN application.  DOH did not consider Trios's additional data.  Therefore, Trios was unable to meet the 200-procedure threshold.  DOH stated that "[t]o accept novel data sources that could not have been [publicly] available prior to the concurrent review cycle changes the process and removes the element of transparency, fairness, and predictability in a Certificate of Need review."  Admin. Rec. (AR) at 32.

---

[1] Trios initially identified an additional 52 PCIs, but reduced that number to 31.  The excluded PCIs included the ones from the Walla Walla hospital.

No. 57403-9-II

*Procedural History*

Trios requested an administrative hearing with a HLJ to contest the denial of the CN. The presiding officer allowed Kadlec to join as an intervenor.

Before the scheduled hearing, Kadlec moved for summary judgment, arguing that Trios's CN denial should be affirmed because DOH's methodology did not project a need for the PCI program. In response, Trios submitted a declaration from Jody Carona, the principal of Health Facilities Planning and Development. She stated in her declaration that the 31 PCIs they identified were coded with a different DRG than DRGs 246-251, but they could have been coded with DRGs 246-251 if a different DRG had not taken precedence based on the patient's condition.

The HLJ granted Kadlec's motion for summary judgment and issued an initial order with findings of fact and conclusions of law. The HLJ rejected Trios's argument that the additional 31 PCIs identified using the ICD-10 procedure code should be included in the need projections. The HLJ concluded that "WAC 246-310-745(4) is clear in requiring that PCIs be defined by DRGs – not procedure codes – when calculating need for new PCI programs." AR at 433. Regarding Trios's argument that data from other sources – like Oregon and Idaho – should be used, the HLJ rejected the argument that the word "include" in WAC 246-310-745(7) allowed considerations of other sources besides the three listed. AR at 432. Trios petitioned for administrative review of the initial order. The review officer issued findings of fact and conclusions of law in a final order that adopted and affirmed the initial order.

In addressing WAC 246-310-745(4), the review officer stated, "The methodology in WAC 246-310-745 does not count every PCI performed. When this application was submitted,

6

No. 57403-9-II

[DOH] could only include PCI cases defined by DRGs 246-251. . . . Therefore, [DOH] cannot

consider the additional PCIs proposed by Trios." AR at 586.

> Regarding the data sources DOH could consider, the review officer concluded,

> The word 'include' may be either exhaustive or nonexhaustive depending on the context. Whereas, use of 'including, but not limited to' has consistently been interpreted by the courts as an illustrative, not exhaustive, list. The context of WAC 246-310-745 point towards interpreting 'include' in subsection (7) as indicating an exhaustive list of data sources because subsection (9) states the data used 'must' be from three specific data sources. WAC 246-310-745(7) only identifies these three specific state data sources and does not open the door to equivalent data sources . . . this Reviewing Officer finds the data sources identified are the exhaustive list.

AR at 585 (citations omitted).

> Trios then petitioned for judicial review of the final order. The superior court affirmed

the final order and denied Trios's petition for judicial review.

> Trios appeals the superior court's denial of judicial review of the review officer's final

order.

ANALYSIS

A.  STANDARD OF REVIEW

> Under the Administrative Procedure Act (APA), chapter 34.05 RCW, we consider the

record before the agency and sit in the same position as the superior court. *Kenmore MHP LLC*

*v. City of Kenmore*, 1 Wn.3d 513, 519-520, 528 P.3d 815 (2023).

> The APA provides nine grounds for reversing an administrative order. RCW

34.05.570(3). Three grounds potentially are applicable here: (1) the agency erroneously

interpreted or applied the law, RCW 34.05.570(3)(d); (2) the order is inconsistent with a rule of

the agency, RCW 34.05.570(3)(h); and (3) the order is arbitrary and capricious, RCW

7

No. 57403-9-II

34.05.570(3)(i). The party challenging the agency's decision has the burden of demonstrating the invalidity of that decision. RCW 34.05.570(1)(a).

When an administrative decision is decided on summary judgment, we overlay the APA and summary judgment standards of review. *Waste Mgmt. of Wash.*, *Inc. v. Wash. Util. and Transp. Comm'n*, 24 Wn. App. 2d 338, 344, 519 P.3d 963 (2022), *rev. denied,* 1 Wn. 3d 1003 (2023). We review the ruling de novo and construe the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment can be determined as a matter of law if the material facts are not in dispute. *Antio LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 134, 527 P.3d 164 (2023).

We review an agency's legal conclusions de novo and give substantial deference to the agency's interpretation of its own regulations when that subject area falls within its area of expertise. *Waste Mgmt. of Wash.*, 24 Wn. App. 2d at 344. We may substitute our own interpretation of the law for that of the agency. *Id.* But we generally will uphold an agency's "interpretation of ambiguous regulatory language as long as the agency's interpretation is plausible and consistent with the legislative intent." *Kenmore MHP*, 1 Wn.3d at 520. " 'An agency acting within the ambit of its administrative functions normally is best qualified to interpret its own rules, and its interpretation is entitled to considerable deference by the courts.' " *Id.* (quoting *D.W. Close Co. v. Dep't of Lab. & Indus.*, 143 Wn. App. 118, 129, 177 P.3d 143 (2008)).

No. 57403-9-II

B.    DEFINITION OF PCI

Trios argues that DOH erroneously refused to include in its projected need calculation the 31 additional PCIs it identified that were not coded under DRGs 246-251 because those PCIs fell within the definition of "PCI" in WAC 246-310-745(4).  We disagree.

For purposes of need forecasting, WAC 246-310-745(4) defines PCIs to mean

> cases *as defined by diagnosis related groups (DRGs)* as developed under the Centers for Medicare and Medicaid Services (CMS) contract that describe catheter-based interventions involving the coronary arteries and great arteries of the chest. . . . .  The department will update the list of DRGs administratively to reflect future revisions made by CMS to the DRG to be considered in certificate of need definitions, analyses, and decisions.

(Emphasis added.)  At the time of Trios's application, the DRGs to be considered were DRGs 246-251.

The additional 31 PCIs Trios identified were not coded under DRGs 246-251.  However, Trios emphasizes that the 31 PCIs *could* have been coded under DRGs 246-251 and therefore would have been considered by DOH if a different DRG had not taken precedence.  Trios states,

> Putting the case in concrete terms, if you go to the hospital with chest pain and receive a PCI and your visit is assigned a DRG code on that basis, [DOH] will count your PCI for its need calculation.  If you go to the hospital for a different reason and your care is coded on that basis, and the doctor determines you also need a PCI, [DOH] will not count that PCI for need purposes even though the same procedure was performed.

Br. of Appellant at 22-23.

Resolution of this issue depends on the interpretation of the phrase "cases as defined by [DRGs]" in WAC 246-310-745(4).  Trios argues that "as defined by" means that a procedure meets the definition of PCI if it is *capable of* being coded under DRGs 246-251, even though they were not actually coded under those DRGs.  Trios emphasizes that if the drafters of WAC

9

No. 57403-9-II

246-310-745(4) had wanted to limit the definition of PCI to only those procedures *actually* coded under DRGs 246-251, they easily could have done so. But the drafters used "defined by" instead of "coded as," thereby negating such a limitation. And according to Trios, DOH's interpretation has the effect of undercounting PCIs and preventing the issuance of a CN when there is a need.

DOH does not dispute that patients with cases classified with DRGs other than DRGs 246-251 may have received a PCI while in the hospital. But DOH emphasizes that WAC 246-310-745(4) deliberately does not count every PCI performed. Instead, to forecast projected need the regulation counts a specific subset of PCIs – those defined by DRGs under the CMS classification system. Patients that may have received a PCI as indicated by a procedure code but were discharged under a different DRG code simply are not counted. DOH notes that if "defined by [DRGs]" does not mean that it must use DRGs in its need projections, the reference to DRGs in WAC 246-310-745(4) would be meaningless. Kadlec argues that the use of well-defined DRG data rather than other alternatives helps assure that applicants are treated evenhandedly and fairly.

We conclude that the plain language of WAC 246-310-745(4) supports DOH's position. For purposes of need forecasting, WAC 246-310-745(4) expressly defines PCIs with reference to DRGs, not ICD-10 procedure codes. In drafting this regulation, DOH could have defined PCI more generally as *any* "catheter-based interventions involving the coronary arteries and great arteries of the chest." Or DOH could have defined PCIs with reference to ICD-10 procedure codes. Instead, the regulation limits the definition to those procedures classified under certain DRG codes. The fact that certain procedures *could* have been coded under DRGs 246-251 is immaterial.

10

No. 57403-9-II

Significantly, the CN regulation contains a general definition of PCIs that does not reference DRG codes. WAC 246-310-705(4). But WAC 246-310-745 contains more specific definitions "[f]or the purposes of the need forecasting method." As noted, the specific definition of PCIs in WAC 246-310-745(4) references DRG codes. If the PCIs included in the need calculation were not defined with reference to DRG codes, DOH could simply have used the general WAC 246-310-705(4) definition.

Even if the language of WAC 246-310-745(4) was ambiguous, we would give deference to DOH's position because the regulation falls within its area of expertise. *Waste Mgmt. of Wash.*, 24 Wn. App. 2d at 344. DOH is best qualified to interpret its own rules. *See Kenmore MHP*, 1 Wn.3d at 520.

Trios argues that we should not give deference to DOH's interpretation of WAC 246-310-745(4) because DOH's position is contrary to legislative intent. One public policy underlying the CN program is to "promote, maintain, and assure the health of all citizens in the state, provide accessible health services, health manpower, health facilities, and other resources while controlling increases in costs." RCW 70.38.015(1). Trios argues that counting all PCIs and not only those PCIs coded under DRGs 246-251 promotes this policy because such an approach provides a more accurate assessment of need.

DOH relies on the definition of "tertiary health service" in RCW 70.38.025(14), which states that such service "requires sufficient patient volume to optimize provider effectiveness, quality of service, and improved outcomes of care." DOH asserts that strictly adhering to the mandatory patient volume threshold is consistent with "promot[ing], maintain[ing], and assur[ing] the health of all citizens in the state," a stated public policy underlying the CN

11

No. 57403-9-II

program. RCW 70.38.015(1). And adherence to the volume threshold helps ensure that other CN providers like Kadlec have sufficient patient volume to "optimize provider effectiveness, quality of service, and improved outcomes of care." RCW 70.38.025(14).

In addition, another public policy of the CN program is that "the development and maintenance of adequate health care information, statistics, and projections of need for health facilities and services is essential to effective health planning and resources development." RCW 70.38.015(3). DOH has implemented this policy by relying on DRG codes to project need for PCI services.

We conclude that DOH's interpretation of WAC 246-310-745(4) is consistent with legislative intent and we give deference to that interpretation. *See Kenmore MHP*, 1 Wn.3d at 520.

We hold that DOH's refusal to consider the 31 additional PCIs identified by Trios was not based on an erroneous interpretation of WAC 246-310-745(4). Therefore, we affirm the review officer's final order on this issue.

C.     APPLICABLE DATA SOURCES

Trios argues that DOH erroneously refused to consider data from sources other than the three sources listed in WAC 246-310-745(7). We disagree.

WAC 246-310-745(7) states,

(7) The data sources for adult elective PCI case volumes *include*:

   (a) The comprehensive hospital abstract reporting system (CHARS) data from the department, office of hospital and patient data;

   (b) The department's office of certificate of need survey data as compiled, by planning area, from hospital providers of PCIs to state residents (including patient

No. 57403-9-II

> origin information, i.e., patients' zip codes and a delineation of whether the PCI was performed on an inpatient or outpatient basis); and
>
> (c) Clinical outcomes assessment program (COAP) data from the foundation for health care quality, as provided by the department.

(Emphasis added.) Trios argues that the word "include" in WAC 246-310-745(7) means that the three sources listed are examples, not an exclusive list. Therefore, DOH can consider other data sources as well.

The cases support Trios's position. The word "include" generally indicates that the following list is illustrative, not exclusive. *City of Edmonds v. Bass*, 16 Wn. App. 2d 488, 499, 481 P.3d 596 (2021), *aff'd,* 199 Wn.2d 403, 414, 508 P.3d 172 (2022). "[O]ur Supreme Court generally recognizes that a statute that uses the term 'including' is one of enlargement, not restriction." *Id.* (citing *Queets Band of Indians v. State*, 102 Wn.2d 1, 4, 682 P.2d 909 (1984)); *see also Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 359, 20 P.3d 921 (2001); *Wheeler v. Dept. of Licensing*, 86 Wn. App. 83, 88, 936 P.2d 17 (1997).

However, DOH and Kadlec argue – and the HLJ and the review officer ruled – that WAC 246-310-745(7) must be read in context with WAC 246-310-745(9). WAC 246-310-745(9) states, "The data used for evaluating applications submitted during the concurrent review cycle *must be* the most recent year end data as reported by CHARS or the most recent survey data available through the department or COAP data for the appropriate application year." (Emphasis added.)

DOH's argument is that WAC 246-310-745(9) states that the data used in evaluating CN applications "must be" from the three sources listed in WAC 246-310-745(7). DOH claims that

No. 57403-9-II

harmonizing subsections (7) and (9) compels the interpretation that the three sources listed in WAC 246-310-745(7) are exhaustive.

Trios argues that WAC 246-310-745(9) relates to the time frames to be used when data is collected from the listed sources rather than restricting the available data sources. This interpretation is not unreasonable. The term "must be" in WAC 246-310-745(9) appears right before the phrase "the most recent end year data." Arguably, the term is directing DOH to use the most recently available end year data, not to only use those three sources of data. Trios also points out that DOH used data from Oregon hospitals in this case and on other prior occasions, even though that data was not from the sources listed in WAC 246-310-745(7).

But DOH's position also is reasonable. WAC 246-310-745(9) can be interpreted as stating that the data used for evaluating CN applications "must be" from the three listed data sources. And the fact that WAC 246-310-745(9) only lists out the same three sources of data contained in subsection (7) suggests that the drafter only contemplated the use of those sources and not some other sources. That subsection could have – but did not – refer generically to "data sources" rather than specifying the sources listed in WAC 246-310-745(7).

Because the language of WAC 246-310-745(9) is ambiguous, we give deference to DOH's position because the regulation falls within its area of expertise. *Waste Mgmt. of Wash.*, 24 Wn. App. 2d at 344. DOH is best qualified to interpret its own rules. *See Kenmore MHP*, 1 Wn.3d at 520.

We hold that WAC 246-310-745(7) is an exhaustive list and that DOH could not consider other sources. Therefore, we affirm the review officer's final order on this issue.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57403-9-II

CONCLUSION

We affirm the review officer's final order.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
CHE, J.

15