IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| GRAYSON MORGAN,<br><br>Appellant,<br><br>v.<br><br>JOEL SACKS, Director of the<br>Department of Labor and Industries,<br><br>Respondent. | No. 86864-1-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Grayson Morgan appeals Department of Labor and Industries Director Joel Sacks' determination that McFerran Law P.S. complied with the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. Grayson argues the director erred by concluding that Grayson was not entitled to wages as a Washington-based employee of McFerran for tasks he performed to assist them in their representation of his brother, Gavin Morgan. Finding no error, we affirm.

FACTS

Grayson[1] is employed as an engineer with the United States Navy Reserve. He also has extensive experience in the real estate business. In 2016, Grayson urged his brother Gavin to buy a home in Tacoma using a United States Department of Housing and Urban Development rehabilitation loan. Gavin

---

[1] For clarity, we refer to Grayson Morgan and Gavin Morgan by their first names. We mean no disrespect.

obtained the loan and bought a house but did not timely complete the rehabilitation. As a result, he violated the terms of the loan.

Grayson tried to help Gavin avoid foreclosure on the loan by gathering and reviewing documents with Gavin, ghostwriting correspondence with vendors and the loan provider, drafting e-mails, and assisting him with filing complaints to government oversight agencies. Over time, Grayson built a database to retain all documents and communications related to the construction and loan foreclosure issues.

In 2017, the lender sued for foreclosure. In November of that year, Gavin hired McFerran attorney Jean Bouffard to represent him in the lawsuit.[2] Grayson paid about 80 percent of Gavin's legal fees, and he and Gavin sought to keep those costs down by doing as much work on the case as possible themselves. At first, Gavin asked Bouffard to rely on Grayson to provide information for the case, and Bouffard would e-mail Gavin to request documents and information. Gavin would then forward the requests to Grayson and Grayson would respond. But after a while, Bouffard started communicating with Grayson directly.

Grayson helped Bouffard with several tasks throughout Gavin's case. While Bouffard drafted pretrial motions, she would call Grayson with questions about the case or ask him to provide missing information, which Grayson did. He also organized and analyzed documents, created timelines, performed legal

---

[2] Despite hiring Bouffard to defend the foreclosure, Grayson continued to help Gavin file pro se complaints against other individuals related to the project.

research, and drafted estimates of damages. At some point, Grayson offered to write a first draft of discovery requests for Bouffard. She accepted the offer.

Bouffard did not track Grayson's hours, bill Gavin for Grayson's time, or ask Grayson for assistance on any of McFerran's other cases. Grayson had no employment agreement, firm e-mail address, or business cards identifying him as a McFerran employee.

Grayson also attended depositions related to Gavin's case. At one deposition, opposing counsel objected to Grayson's presence. In an effort to prevent Grayson from being excluded from the deposition, Bouffard asserted that Grayson was her "paralegal for purposes of this case." She also described Grayson as a "volunteer paralegal" to assert protections under the attorney-client privilege when opposing counsel moved to compel disclosure of e-mail communications between Grayson and Bouffard. The judge disagreed with Bouffard's characterization and granted the motion to compel.

In late 2019, Bouffard withdrew from Gavin's case. Still, Grayson continued to assist Gavin with his efforts to avoid foreclosure. He sent letters to parties on Gavin's behalf and filed bar complaints against lawyers involved in the foreclosure action, including Bouffard and other McFerran lawyers. In May 2020, Gavin lost his home to foreclosure.

On November 1, 2020, Grayson filed a worker rights complaint with the Department of Labor and Industries (DLI), alleging that he worked on Gavin's case as an employee of McFerran and that the firm owed him wages under the

MWA for unpaid work hours. Grayson estimated McFerran owed him wages for 1,077 hours.[3]

The DLI assigned an industrial relations agent to investigate Grayson's complaint. In December 2020, the investigator issued a final determination, concluding that Grayson was not a Washington-based employee, so the DLI did not have jurisdiction over his complaint. The investigator did not decide whether Grayson and McFerran developed an employer-employee relationship.

Grayson complained to the DLI about the investigator's handling of the case. And on March 12, 2021, the DLI reopened the case because of a policy change. The investigator then determined that Grayson was neither a McFerran employee nor a Washington-based worker. On June 24, 2021, the investigator issued a "Determination of Compliance," concluding that McFerran did not violate the MWA. Grayson appealed.

In April 2022, an administrative law judge (ALJ) heard testimony from the parties and considered several exhibits. In June 2022, the ALJ issued written findings of fact and conclusions of law affirming the Determination of Compliance. Grayson then appealed to the DLI director. In November 2022, the director adopted the ALJ's findings and conclusions and affirmed the Determination of Compliance.

Grayson petitioned the superior court for judicial review. The trial court transferred the petition to this court on the parties' stipulation for direct review.

---

[3] Grayson's calculation of hours worked varied over time.

ANALYSIS

Grayson argues that the DLI director erred by concluding that Grayson had no employer-employee relationship with McFerran. He contends that the director misapplied the law and that substantial evidence does not support several of the director's findings. We disagree.

We sit in the same position as the superior court when reviewing agency actions. *Darkenwald v. Emp. Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). Accordingly, we review the administrative record of the highest forum that exercised fact-finding authority rather than any findings or conclusions issued by the superior court. *See id.* at 244.

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of administrative agency decisions. RCW 34.05.570. We will grant relief from an agency's decision if the agency committed any of the enumerated errors under RCW 34.05.570(3). One of those errors is when the agency erroneously interprets or applies the law. RCW 34.05.570(3)(d). We may also reverse an administrative order if substantial evidence does not support it " 'when viewed in light of the whole record before the court.' " *Greenfield v. Dep't of Lab. & Indus.*, 27 Wn. App. 2d 28, 44, 531 P.3d 290 (2023) (quoting RCW 34.05.570(3)(e)), *review denied*, 2 Wn.3d 1013, 540 P.3d 774 (2024). The party challenging the agency action bears the burden of proving that a final agency order is invalid. RCW 34.05.570(1)(a).

We review issues of law de novo. *Darkenwald*, 183 Wn.2d at 244. We also review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179

Wn.2d 756, 761, 317 P.2d 1003 (2014). When interpreting a statute, we aim to carry out the legislature's intent. *Birgen v. Dep't of Lab. & Indus.,* 186 Wn. App 851, 857, 347 P.3d 503 (2015). We derive legislative intent from the plain meaning of the statute. *Id.* And if the plain language is unambiguous, we "give the words their common and ordinary meaning." *Tesoro Refin. & Mktg. Co. v. Dep't of Revenue*, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012).

When reviewing for substantial evidence, we must determine whether there is " 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.' " *Coaker v. Dep't of Lab. & Indus.*, 16 Wn. App. 2d 923, 931, 484 P.3d 1265 (2021)[4] (quoting *King County v. Cent. Puget Sound Growth Mgmt. H'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000)). We treat unchallenged findings as verities on appeal. *Smith v. Emp. Sec. Dep't*, 155 Wn. App. 24, 33, 226 P.3d 263 (2010). But we review challenged findings for substantial evidence in light of the whole record. *Id.* at 32-33. And we view the evidence and make all reasonable inferences in the light most favorable to the prevailing party. *Cummings v. Dep't of Licensing*, 189 Wn. App. 1, 10, 355 P.2d 1155 (2015). Further, we do " 'not disturb findings of fact supported by substantial evidence even if there is conflicting evidence.' " *Id.* at 11[5] (quoting *McCleary v. State*, 173 Wn.2d 477, 514, 269 P.3d 227 (2012)).

The MWA applies to all Washington employees. RCW 49.46.005(1). The MWA defines an "employee" as "any individual employed by an employer." RCW

---

[4] Internal quotation marks omitted.

[5] Internal quotation marks omitted.

6

49.46.010(3). And an "employer" is "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." RCW 49.46.010(4). Under the MWA, to "employ" means "to permit to work." RCW 49.46.010(2). Read together, an employer-employee relationship exists under the MWA when a business or person acting directly or indirectly in its interest permits an individual to work.

Here, the director determined McFerran and Grayson had no employer-employee relationship. He reasoned that Bouffard did not act directly or indirectly "*in the interest of an employer* in relation to an employee" when she permitted Grayson to complete several tasks related to Gavin's case. Instead, Bouffard permitted Grayson to work so he could reduce Gavin's legal fees and otherwise assist his brother.

Grayson argues the director misapplied the law when he determined the MWA required Bouffard to act in McFerran's interest to meet the definition of "employer." He asserts we must view the language in RCW 49.46.010(4) through the lens of the last antecedent rule.[6] According to Grayson, the phrase "acting directly or indirectly in the interest of an employer" applies to only the immediate phrase "any person or group of persons" and is meant to "recognize"

---

[6] Under the last antecedent rule, " 'qualifying words and phrases refer to the last antecedent.' " *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006) (internal quotation marks omitted) (quoting *Berrocal v. Fernandez*, 155 Wn.2d 585, 593, 121 P.3d 82 (2005)). And the corollary principle related to this rule provides that "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." *Id.*

that "employers" include those persons or groups of persons acting as agents of the employer. But we do not apply the last antecedent rule " 'if other factors, such as context and language in related statutes, indicate contrary legislative intent.' " *Dep't of Labor & Indus. v. Slaugh*, 177 Wn. App. 439, 450-51, 312 P.3d 676 (2013) (quoting *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010)).[7] And here, a related statute shows a contrary intent.

Our legislature patterned the MWA, including its definitions, after the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219. *Anfinson v. FedEx Ground Package Sys., Inc.,* 174 Wn.2d 851, 868, 281 P.3d 289 (2012). As a result, interpretations of comparable provisions of the FLSA are persuasive authority when construing the MWA. *Kilgore v. Shriners Hosp. for Child.*, 190 Wn. App 429, 435, 360 P.3d 55 (2015). And the FLSA defines "employer," in relevant part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The plain language of that statute makes clear an employer is "any person," no matter the business structure, acting in the interest of an employer in relation to an employee.

While the MWA more specifically identifies potential employers as "any individual, partnership, association, corporation, business trust, or any person or group of persons," nothing in that language expresses an intent to depart from

---

[7] Grayson also cites *Brown v. Scott Paper Worldwide Co.,* 143 Wn.2d 349, 357-58, 20 P.3d 921 (2001), to support his argument that we should apply the last antecedent rule. But *Brown* analyzed whether a person who employs fewer than eight employees could be an "employer" subject to liability under the Washington Law Against Discrimination, chapter 49.60 RCW. *Id.* That case is inapt here.

the FLSA's requirement that those entities must act "directly or indirectly in the interest of an employer in relation to an employee" to qualify as an employer. RCW 49.46.010(4); 29 U.S.C. § 203(d).  The director did not misapply the law in determining that Bouffard must have been acting in the interest of McFerran in relation to Grayson to qualify as an employer.

Further, the director's findings substantially support its conclusion that Grayson acted to benefit himself and Gavin when performing tasks related to Gavin's case.

The director found that before hiring Bouffard, Grayson helped Gavin try to fend off a forfeiture action by reviewing documents and sending letters on his behalf.  Then, after Gavin hired Bouffard, Grayson and Gavin sought to assist her with the case when possible to avoid unnecessary attorney fees.  Gavin told Bouffard to rely on information provided by Grayson because Gavin did not have the time or energy to assist her, Grayson had intimate knowledge of the facts, and Grayson kept a database of records.  Indeed, in a declaration, Grayson acknowledged that "Gavin and his Counsel rely on my recollections and my record keeping to support their strategic work in this litigation. . . . I am dedicated to helping my brother with this lawsuit."  The director also found that Grayson had no employment agreement with McFerran, McFerran did not issue him business cards or provide him with a firm e-mail address, and Grayson worked on only Gavin's case.  And he determined that Grayson understood Bouffard's

9

characterization of him as a "volunteer paralegal" was strategic.[8]

Still, Grayson argues that his work benefitted McFerran because he drafted discovery requests and helped draft and respond to motions. He contends that these are tasks typically done by McFerran employees, so the firm saved costs by assigning the work to him. But Grayson ignores that McFerran typically bills those costs to its clients. So, had Grayson not performed those tasks, the firm would have passed the costs on to Gavin. And Grayson affirmatively states that he sought to perform those tasks to help his brother avoid higher attorney fees.

Finally, Grayson challenges the director's findings that Bouffard did not assign or require him to perform tasks and that McFerran did not evaluate or supervise his work.[9] But Bouffard testified that Gavin told her to contact Grayson to obtain information and that Grayson freely provided it. She also testified that she did not give "directives" to Grayson. For example, Grayson initiated the e-mail to Bouffard that he could draft discovery requests, and Bouffard replied, "Sure. It will be of some help." Finally, Grayson agreed that he did not receive performance evaluations from McFerran.

---

[8] Grayson challenges the finding that he understood Bouffard's characterization of him as a "volunteer paralegal" was strategic. But Grayson testified that he understood he was being "cloaked in the title 'volunteer paralegal' so that [his] communications with McFerran law . . . could be kept confidential attorney work product and not disclosed to the other party." He said that he accepted this strategy after Bouffard offered it to him. His testimony amounts to substantial evidence supporting the court's finding.

[9] Grayson suggests that the director ignored his testimony that Bouffard assigned him tasks and reviewed his work. But again, we do not disturb findings of fact supported by substantial evidence, even if there is conflicting evidence. *Cummings*, 189 Wn. App. at 11.

Because the DLI director did not misapply the law and substantial evidence supports his conclusion that McFerran was not Grayson's employer, we affirm the Determination of Compliance.[10]

_Brennan, J_

WE CONCUR:

_Birk, J._          _Coburn, J._

---

[10] Grayson also argues the director erred in determining he was not a "Washington-based" employee.  Because we conclude that Grayson was not a McFerran employee, we do not address this argument.